CUNEY GRAND LODGE, C. A. F. & A. M. *et al.* v. STATE.*

(Division B. May 10, 1926.)

[108 So. 298. No. 25659.)

1. BENEFICIAL ASSOCIATIONS. *Where fraternal corporation in solic-
iting members falsely represents that they will be received into
regular Masonic lodges throughout the United States, state may
forfeit charter and restrain receiving members by such means
pending trial of forfeiture proceedings (Laws 1920, chapter
299, section 1 [b]; Code 1906, sections 897-938).*

Where a fraternal corporation whose charter grants it power to promote and extend benevolences, charity, and fraternity among its members and to organize subordinate lodges and chapters in the state, and where in soliciting its members it represents falsely and fraudulently that its members will be received into regular Masonic lodges throughout the world, thereby procuring fees and moneys from such members relying upon such representations, the state has the right to forfeit the charter and to restrain the receiving of members by such means pending the trial of the forfeiture proceedings.

2. Beneficial Associations. *Courts do not entertain jurisdiction of controversy with regard to conflicting claims of different fraternal organizations as to which represent regular and true fraternity; court will not adjudicate controversies between different fraternal organizations as to whether they are duly authorized or regular in doctrine.*

The courts of the state do not entertain jurisdiction of controversy with regard to conducting claims of different fraternal orginizations as to which represent the regular and true fraternity. It will not adjudicate controversies between such parties as to whether it is duly authorized or is regular in its doctrine according to the true principles of the named associations or fraternities.

3. Beneficial Associations. *Evidence. Court cannot judicially know what are true principles and degrees of free Masonary or of similar organizations, nor adjudicate between conflicting organizations with reference thereto; so long as no fraud is used in procuring membership in fraternal organizations by false representations, court will not undertake to control such societies or lodges in their operations; unless protected by copyright, or unless private property rights are involved, court will not entertain jurisdiction over lodge disputes.*

The court cannot judicially know what are the true principles and degrees of free Masonry or of similar organizations, nor adjudicate between conflicting organizations with reference thereto, and so long as no fraud is used in procuring membership by false representations, the court will not undertake to control such societies or lodges in their operations. Unless protected by copyright, or unless private property rights are involved, the court will not entertain jurisdiction over lodge disputes.

4. Benfficial Associations. *Where state undertakes to forfeit charter of fraternal lodge because of fraudulent use, court will*

*not restrain members from meeting for transaction of business among themselves, but will only restrain receiving new members through false and fraudulent representations.*

Where a fraternal lodge is organized under a charter of the state, and the state undetakes to forfeit such charter because of fraudulent use of the charter, the court will not restrain the members of such organization meeting for the transaction of business among themselves, but will only restrain the receiving of new members through false and fraudulent representatives.

---

*Corpus Juris-Cyc References: Beneficial Associations 7CJ, p. 1067, n. 53; p. 1116, n. 54; p. 1117, n. 60 New, 63; p. 1118, n. 66 New; Corporations 14aCJ, p. 1107, n. 98; p. 1108, n. 26, 28, 29, 30, 31, 32; Evidence 23CJ, p. 159, n. 18 New.

APPEAL from chancery court of Forrest county.
HON. T. P. DALE, Chancellor.

The Attorney-General, in the name of the state, sued out an injunction against the Most Worshipful Cuney Grand Lodge, Colored Ancient Free & Accepted Masons, and others, for an injunction and to forfeit lodge charters. From a judgment overruling an answer, treated as a demurrer to the bill, defendants appeal. Affirmed in part, and reversed in part.

The Attorney-General of the state sued out an injunction against the appellants, alleging that the appellants obtained a charter from the state of Mississippi through T. J. Cuney, Ira Cooper, and E. L. Johnson, incorporators, of Jackson, Mississippi, under chapter 299 of the Laws of 1920. He alleged that in 1868 the Grand Lodge of Ancient Free and Accepted Colored Masons of the state of Ohio established three local or subordinate lodges in the state of Mississippi, one known as Stringer Lodge, at Vicksburg, Mississippi, one called Lynch Lodge, at Jackson, Mississippi, and one called Revels Lodge, at Natchez, Mississippi, which said lodges were chartered by the Colored Grand Lodge of the said state of Ohio, and that shortly thereafter other lodges were established by warrant issued by the same authority and organized in the state of Mississippi, and that thereafter

the said subordinate lodges were organized into a Grand Lodge for the state of Mississippi of colored Masons, which has been operating and establishing other lodges from time to time to this date; that said lodges were legally authorized by warrant and empowered to work by virtue of the laws and customs established and recognized by the colored Masons of the state of Mississippi, as well as the state of Ohio.

It is further alleged that about three years ago, and prior to the granting of the charter in question, one T. J. Cuney, who claims to be the Most Worshipful Grand Master of the said Cuney Grand Lodge, and who is exercising the powers and authority and performing the duties of the said office, appeared in the state of Mississippi and sought to be recognized and received upon fraternal relations by the then regularly constituted colored Masonic lodges, but whose application and recognition was denied by said lodges because of the spurious and clandestine source from which he claimed to have received his Masonic degrees, and when he presented his Masonic credentials, claiming to have been commissioned or deputized by a Masonic source from the state of Illinois, it was discovered that the pretended commission purported to have been signed by one John G. Jones, of Illinois, who was known to have been dead for many years prior to the date of the fixing of the alleged signature thereto. That thereafter the said Cuney unlawfully and without proper Masonic authority proceeded to organize and establish clandestine colored Masonic lodges in the state of Mississippi, and did establish one of the said pretended lodges in the city of Jackson, and also one in the city of Hattiesburg, and in other places in Mississippi, having illegally and unlawfully established something like 50 in number of said clandestine lodges of colored Masons in Mississippi; that during the month of October, 1924, the said Cuney, Ira Cooper, and E. L. Johnson, all of Jackson, Mississippi, unlawfully ap-

plied for and obtained a charter from the state of Mississippi, which charter is made an exhibit to the appeal.

It is further charged that by chapter 24 of the Code of 1906, providing how charters should be obtained, that section 933 of said Code, providing for the charter of religious societies and other organizations, by specifically providing that societies so organized in each particular locality shall be a distinct and independent society, thereby providing for the issuance of many charters by the state instead of a few, for the purpose of increasing the revenue to the state, did not provide for the issuance of a Grand Lodge charter covering the whole state and authorizing said Grand Lodge to issue charters of its own to other localities, whereby the state would be deprived of the revenue for such charters.

It is further alleged that in 1920 by chapter 299 of the Laws of 1920, section 1, it was provided that:

"(b)   The local lodges, chapters, councils, or by whatever name known, of the Masons, Odd Fellows, Knights of Pythias, Elks, Woodmen of the World, and other such fraternal organizations, together with temperance societies, charitable associations, schools, literary institutions, lyceum associations, religious societies, fire companies, machanics' associations, fair associations, agricultural societies and civic improvement societies, may be likewise incorporated, on the application of any three members authorized by the organization, on its minutes, to apply for the charter.

"Such corporations shall not be required to make publication of their application for charter, shall issue no shares of stock, shall divide no dividends or profits among its members, shall make expulsion the only remedy for the nonpayment of dues, shall vest in each member the right to one vote in the election of all officers, shall make the loss of membership, by death or otherwise, the termination of all interest of such member in the corporate assets, and there shall be no individual liability against

the members for corporate debts, but the entire corporate property shall be liable for the claims of creditors.''

It was alleged that this act did not authorize the issuance of a Grand Lodge charter, and that there was no authority of law for the application for such a charter as was granted to the appellants in this case.

It is further alleged that T. J. Cuney, its present Most Worshipful Grand Master, was abusing whatever privileges were granted him under the said charter, and that he was using said privileges for the purpose of cheating and defrauding many of the colored citizens of the state of Mississippi by claiming power and authority under said charter, that was never made known in his application and was never granted him by said charter, among which he claimed to be the Deputy Sovereign Grand Commander of the United Supreme Council of the Southern Jurisdiction of the United State of America, Grand Orient of Washington, D. C., organized in April, 1869, which said lodge or authority became defunct or extinct in 1877, and that no such title is in existence as claimed by him; that he fraudulently represents himself to be the Grand Potentate of the Arabic Order of Nobles of the Mystic Shrine of the United States of America. He further represents himself as being the Grand Patron of the Order of the Eastern Star of the United States and Canade; and he also represents himself as the Most Worshipful Grand Master of the Cuney Grand Lodge of the Ancient Free and Accepted Masons of the state of Mississippi, and is now exercising the duties and filling the said office, and has his said pretended Grand Lodge provided for in the said pretended charter, open an in session, and is transacting such business of the said pretended Grand Lodge in the city of Hattiesburg, Forrest county, Miss.

The state charges that he is making all of the above claims to the titles, above described, under and by virtue of the said pretended charter, mentioned herein, for and on behalf of the said organizations named in the

said charter. It is further charged that under and by virtue of authority granted in the charter to the said Grand Lodge, defendant is fraudulently claiming the right, and fraudulently pretending; to confer all of the Masonic degrees in what is known as the York and Scottish Rite Blue Lodge degrees, and all of the higher, both York and Scottish Rite degrees, including the thirty-third, and fraudulently pretending and claiming to confer all of the degrees in the Chapter Council, Commandry, and Shrine upon various and sundry persons, both men and women, at one and the same time, and claims to confer all of said degrees in one night, and has conferred all of the said pretended degrees within 30 minutes.

It is further alleged that said Grand Lodge does unlawfully make all of its claims and undertakes to exercise all of the before mentioned privileges and immunities under and by virtue of the charter here in question. It is further alleged that the defendant claims to have a fixed charge or fee of six, dollars and fifty cents for the conferring of the said degrees, but that in massing his candidates to receive said degrees Cuney frequently conferred the degrees for whatever amount of money its candidates can and will pay, from one dollar and fifty cents up; that the moral fitness of the candidate is not to be considered, but the policy and practice is to find out how much cash he has, take that, and put him in a class and rush him through, and by means of said unlawful claims and pretended authority many colored citizens of the state of Mississippi have been and are being misled, cheated, and defrauded of their money by the said defendant through its chief and presiding officer.

It charged that the said power granted in the said charter to promote and extend benevolence, charity, and fraternity among its members is being and has been converted into a purely commercial organization for the purpose of extracting from negro citizens of the state their money for the enriching of the pretended grand officers of the said pretended Grand Lodge, and in pursuance of

such fraudulent intent and purpose, and with the design and intent to defeat the laws of the state of Mississippi, the said defendant is organizing many bogus and fraudulent subordinate lodges throughout the state, and thereby sowing the seeds of discord among the colored citizens of the state, creating dissension and strife through the entire state.

It is further alleged that among the fraudulent representations made by Cuney and his representatives to those who received the degrees of the said lodges is that they would be received as regular Masons throughout the world; Cuney and his representatives knowing such representations to be false and fraudulently made.

The state prays for a temporary writ of injunction to be issued against the said defendants, the appellants herein, commanding them and restraining them and each of them from doing or performing any of the unlawful acts complained of herein and from organizing subordinate lodges, collecting fees, or conferring the pretended Masonic degrees mentioned in the bill of complaint, or from meeting publicly or secretly or transacting any business under its charter anywhere in the state of Mississippi until their right to do so is adjudicated by the court; and, upon final hearing, the said injunction be made perpetual, and prays for general relief.

Sections 7 and 8 of the charter state the purpose for which it is created, and read as follows:

"7. The purpose for which it is created is to promote and extend benevolence, charity, and fraternity among its members and to organize subordinate lodges and chapters in the state of Mississippi.

"8. The rights and powers that may be exercised by this corporation are those conferred by the provisions of chapter 24, Mississippi Code of 1906, and by the provision of chapter 299 of the Laws of Mississippi, enacted in 1920:

"Provided, that the said corporation shall issue no shares of stock, shall divide no dividends or profits among

its members, shall make expulsion the only remedy for nonpayment of dues, shall vest in each member the right to one vote in the election of officers, shall make the loss of membership by death or otherwise the termination of all interest of such member in the corporate assets, and that there shall be no individual liability against the members for corporate debts but the entire corporate property shall be liable for the claims of creditors.''

The injunction was granted in accordance with the prayer.

The defendants answered, denying the principal allegations of the bill, and setting out that the suit was brought on behalf of private interests of colored persons belonging to and operating the Stringer Grand Lodge of Ancient Free and Accepted Colored Masons, and that the state of Mississippi had no concern in the controversy between the said rival lodges, and that the state is not concerned with whether the appellants practice regular, authentic Masonic principles, and saying that the courts of the state do not concern themselves with litigation to establish rival claims in reference to principles of Masonry, or religion, or other controversies of like kind and character.

The jurisdiction of the court was also challenged on the grounds that the domicile of the corporation was at Jackson, Miss., and that the holding of the Grand Lodge at Hattiesburg, Miss., was not the doing of a corporate business within that territory. The defendants availed themselves of the privilege of presenting the legality of the bill in their answer, authorized by the recent Chancery Practice Act, it being treated as a demurrer by all parties herein, which demurrer was overruled by the court and appeal granted to settle the principles of the case. The grounds of the demurrer are as follows:

"A.   There is no equity upon the face of the bill.

"B.   The said bill and the exhibits thereto conclusively show that the state of Mississippi has no interest in the subject-matter thereof.

"C. The said bill and the exhibits thereto further show that there were threatened to the state of Mississippi no irreparable injury of any kind, and that there was no justification shown for the issuance of an injunction herein.

"D. The said bill conclusively shows that there was no wrong done by the defendants or any of them which could give to the state of Mississippi any right to the relief prayed for in the bill or any relief.

"E. Assuming that the state of Mississippi had some right involved, the present bill nevertheless shows on its face a total lack of jurisdiction of this cause in the court in which it is filed.

"F. Even if this bill should be taken as ancillary to the *quo warranto* proceeding filed in the circuit court of Forrest county, Mississippi, against the defendants herein, yet the said circuit court had not, nor has it now, any jurisdiction of the said *quo warranto* proceeding, because the same was not brought at the domicile of the Cuney Grand Lodge as required by the law of this state.

"G. That the exclusive remedy given to the state of Mississippi in case of defective corporate organizations or in case of misuse or abuse by a corporation of its charter powers is the remedy by proceeding in *quo warranto,* and a court of equity is without jurisdiction to hear or determine the matters and things charged in the bill of complaint, or to give the relief prayed for therein.

"And as to the above and foregoing matters in this section set forth the defendants pray that they may have the same advantage thereof as if they had demurred to the said bill of complaint."

*Eugene Palmer* and *Robt. B. Ricketts,* for appellants.

I. *It conclusively appears from the bill itself that the State of Mississippi had a plain, adequate and complete remedy at law.* See the chapter on *Quo Warranto,* section 3019, Hemingway's Code (section 4024, Code of

1906). "A complainant seeking an injunction must show
that he has exercised strict diligence and availed himself
of every remedy otherwise afforded by statute." *Brooks*
v. *Shelton,* 47 Miss. 243. An injunction will not be grant-
ed where the remedy at law is inadequate. *Pollard* v. *Pha-
len,* 53 So. 453; *Ricks* v. *Richardson,* 70 Miss. 424, 11 So.
935. The jurisdiction of the circuit court in matters of
*quo warranto* is exclusive. See section 3013, Heming-
way's Code (section 4018, Code of 1906).

In this case an injunction is sought at a time when
there is pending in the circuit court a suit in which full
relief can be given. That suit is a suit of which the cir-
cuit court has exclusive jurisdiction. That court could
have made any suitable and proper restraining order as
against the said Cuney Grand Lodge and its officers. That
very circuit judge who issued the fiat for the injunction
in this cause could have made any proper restraining
order in the cause pending in his own court. *The sole
justification for the issuance of the injunction is the ex-
istence of an emergency—of a condition for which there
is no other relief.* 22 Cyc. (Injunctions) 774. An in-
junction will not be granted *ex parte* and without notice
except in cases of the greatest emergency *Glover* v.
*Falls,* 82 So. 4, 120 Miss. 201; *Alexander* v. *Wood,* 103
Miss. 869, 60 So. 1017. The case of *Water Valley* v.
*State,* 103 Miss. 645, is authority for the statement that
injunctions are not properly granted in mandamus or
prohibition cases.

II. *The fact that T. J. Cuney is attempting to confer
so-called Masonic degrees and is assuming to be an offi-
cial of some Masonic organization does not entitle the
state to any sort of relief.* The determination of the
said Cuney's right to confer such degrees and the de-
cision of the question whether he and his grand lodge
or the Stringer Grand Lodge are regular or irregular
Masons is not a matter for the decision or even the con-
sideration of the courts of this state. See *Smith* v.

*Charles,* 24 So. 968. There can be no good reason why courts should regard themselves as the guardians of orthodox Masonic doctrines or polity when they consistently refuse to assume to decide such matters as to religious organizations. The attitude of our own court is clearly apparent from the decision in *Vicksburg Lodge* v. *Grand Lodge,* 76 So. 572.

The authenticity or spuriousness of the Masonic work ·being done by Cuney et al. does not constitute a basis for interference by the state. Therefore, charges of irregularities which are such only when viewed from the standpoint of the Stringer Grand Lodge cannot be the basis for jurisdiction herein.

III. *But it may be said that the individual defendants are pretending to be officers in a corporation which has no legal existence—a corporation which could not be chartered or exist under our laws.*

When the state filed its *quo warranto* suit against the Cuney Grand Lodge, it thereby became and was concluded as to its corporate existence. So far as the state is concerned the corporate existence of the Cuney Grand Lodge is admitted. The validity of its incorporation cannot be in this suit denied. 22 R. C. L. (*Quo Warranto*) 697; Ann. Cas. 1913-A, 570; *State* v. *Commercial Bank,* 33 Miss. 474.

*The charter of the Cuney Grand Lodge was granted in strict accordance with the law.* It was contended for the complainant that the case of *Goodman* v. *Loan Ass'n.,* 71 Miss. 310, was not the authority for us. It was charged that the general law governing the formation of corporations had been essentially changed since the time of that decision. Section 4069, Hemingway's Code was the general law in effect when the Cuney Grand Lodge was incorporated. Up to the first semicolon of the Hemingway Code section the statute runs word for word exactly the same as it stood in 1880. The Goodman case is, therefore, directly in point. The act of 1920 merely threw certain regulations and restrictions.

about the formation of local lodge corporations and provided for the fees to be charged. It did not require such local lodges to incorporate. It did not say that no other sort of lodge corporations could be formed. The construction for which we contend has been adopted by the attorney general's office in passing upon the charters of at least three grand lodges of Masons.

IV. *It is improper for the attorney general to proceed by quo warranto for the redress of private grievances.* The whole proceedings is brought for the benefit of the Stringer Grand Lodge of Colored Masons. The courts will not entertain a *quo warranto* suit in such circumstances. *State* v. *A. T. & S. F. Ry. et al.,* 63 L. R. A. 761, 776); *People* v. *Gen. Electric Co.,* 172 Ill. 179, 32 C. J., p. 295.

The sole ground for relief is the alleged invalidity of the charter of the Cuney Grand Lodge. A suit is now pending to try out that question. It is not pending in a court having jurisdiction (on account of venue) of the case. The circuit court has under the statute *exclusive jurisdiction* of the only controversy in which the state has any conceivable interest. The chancery court of Forrest county was without jurisdiction of the cause.

It is respectfully submitted that the decision of the chancery court should be reversed and the cause dismissed.

*Paul B. Johnson* and *John R. Tally,* for the state.

We will undertake to discuss the points raised by the demurrer in order in which they are raised; as follows: (1) "There is no equity on the face of the bill." We contend that there is equity on the face of the bill. The bill, in an historical way, recites how in 1868 in the legal way a grand lodge of colored Masons was established in this state by an authorized negro grand lodge in the State of Ohio, and then it charges that the said T. J. Cuney, who was an expelled Mason, had no authority

from any grand lodge jurisdiction to set up a Masonic grand lodge, and could not have any under Masonic law. We then charge that he unlawfully and illegally obtained this charter in question from the State of Mississippi, which appellee would have been abundantly able to prove on the trial of the merits of this cause, as it did prove in the circuit court in the trial of the *quo warranto* proceeding, that the said T. J. Cuney, Ira Cooper and E. L. Johnston never in any wise complied with chapter 299, Laws of 1920.

The bill further shows that this charter was obtained claiming to promote fraternal relations among its members and yet it charges and shows by its allegations that its powers were converted and perverted into a purely money making scheme; that its officers did not charge its applicants a uniform fee, but would take any sum and whatever sum of money that could be extracted from anybody who could be induced to let this bunch operate on him in the name of Masonry.

The bill charges that they have imposed upon innocent negro citizens, extracting their money and using said charter as authority from said state to rob these ignorant, unsuspecting negroes, thereby operating under what would be termed legalized robbery, and further charges that instead of the State of Mississippi being able to sell many charters to the different local Masonic lodges, that the Cuney Grand Lodge itself, under and by virtue of its charter, claims power under the charter authorizing it to organize sub-ordinate lodges and sell to the sub-ordinate lodges charters and collect fees therefor, instead of the state's being permitted to issue charters to the local Masonic lodges and collect the fee therefor. We contend that the bill of complaint is honey-combed with equity.

ETHRIDGE, J., delivered the opinion of the court.

(After stating the facts as above). Chapter 299 of the Laws of 1920, section 1 (a), provides that the person

desiring to be incorporated (in a corporation of the kind here involved) shall apply to the secretary of state for the necessary form of application for a charter, which form shall be as follows:

"The charter of incorporation of ———.

"1. The corporate title of said company is ———.

"2. The names of the incorporators are:

"——— Post-office ———.

"——— Post-office ———.

"——— Post-office ———.

"——— Post-office ———.

"3. The domicile is at ———.

"4. Amount of capital stock ———.

"5. The par value of shares is ———.

"6. The period of existence (not to exceed fifty years) is ——— years.

"7. The purpose for which it is created is ———.

"8. The rights and powers that may be exercised by this corporation are those conferred by the provisions of this chapter.

"9. The ——— which it is proposed to build and operate as (here described the line and state the points it will traverse) ———."

It is provided that said application shall be acknowledged, etc., and presented to the secretary of state, and by him referred to the Attorney-General, who shall pass upon its legality and return the same to the Governor with his opinion thereon, and that the powers specified in the charter shall by the approval of the charter be vested in such corporation which shall go into operation at the time and on the terms and conditions specified.

Paragraph (b) of the said section reads as follows:

"The local lodges, chapters, councils or by whatever name known, of the Masons, Odd Fellows, Knights of Pythias, Elks, Woodmen, of the World, and other such fraternal organizations, together with temperance societies, charitable associations, schools, literary institutions, lyceum associations, religious societies, fire com-

panies, mechanics' associations, fair associations, agricultural societies and civic improvement societies, may be likewise incorporated, on the application of any three members, authorized by the organization, on its minutes, to apply for the charter.

"Such corporation shall not be required to make publication of their application for charter, shall issue no shares of 'stock, shall divide no dividends or profits among its members, shall make expulsion the only remedy for the non-payment of dues, shall vest in each member the right to one vote in the election of all officers, shall make the loss of membership, by death or otherwise the termination of all interest of such member in the corporation assets, and there shall be no individual liability against the members for corporate debts, but the entire corporate property shall be liable for the claims of ceditors."

It will be seen from the statement in the charter that the purpose for which the corporation was created was to promote and extend benevolence, charity, and fraternity among its members and to organize subordinate lodges and chapters in the state of Mississippi; that the rights and powers to be exercised were those conferred by law in such case; that it was provided in the charter, as in the statute (paragraph [b], section 1, chapter 229, Laws of 1920), that no shares of stock shall be issued, and no dividends or profits among the members shall be divided, and that nonpayment of the dues could only be enforced or provided for by expulsion, and that the death of any member forfeited all rights in the property of the corporation, and that there should be no individual liability against the members for corporate debts, but that the entire corporate property should be liable for the claims of the creditors. As the charter of incorporation did not set forth by what means and methods the work of such corporation would be carried on, nor whether it would have a ritual, degree, signs, and passwords, etc., or what particular principles would be

adopted within the classification mentioned in the char-
ter and by the statute, although the title did indicate
from the name of the corporation something of its gen-
eral purpose, it was not represented in the charter that
the degrees to be conferred would be regular degrees of
Masonry or of any particular Masonic organization.

The state, of course, is not concerned with questions
of whether the principles or degrees of lodges are regu-
lar and authorized by Masonry or not. The court can-
not judicially know what the principles and degrees of
free Masonry are, or of any particular brand of doc-
trine known as free Masonry, if there be differences of
organizations and principles. That is a matter with
which the state is not concerned so long as no fraud is
used to deceive a person solicited to join or be received
into these orders. Unless protected by the copyright
laws, or embracing property rights, these rituals, forms,
and ceremonies will not be controlled or protected by the
court. In other words, before the court will interfere
in such a case, there must be an infringement of property
rights, property damage, or personal injury. But the
bill charged that the appellants were representing to
prospective members and to those who were received in-
to membership that the degrees conferred were regu-
lar and that they would give Masonic affiliation in other
jurisdictions and other rights throughout the world, and
that these statements were untrue and false and know-
ingly made to the parties to deceive.

Of course, the court is not concerned with the length
of time it would require to confer the degrees adminis-
tered to an initiate, nor is it concerned with the price
charged to candidates or initiates for the degrees, but
the state is concerned with the question as to whether
its charters are used as instruments of fraud and wrong-
doing. Is the case of *Jackson Loan & Trust Co.* v. *State,*
101 Miss. 440, 56 So. 293, this court announced that it
would use the remedy of injunction in proper cases to
restrain the fraudulent use of a charter granted by the

state.    In the first syllabus of this opinion the court said:

"Where a loan company by means of attractively worded literature and by representations of its soliciting agents, seeks to induce the public generally, and prospective customers particularly, to believe that all purchasers of its contracts will receive loans from the company upon easy terms with which to purchase homes, and the funds of the corporation and its method of bus-, iness render it impossible for the company to make loans to all purchasers of its contracts, its promises so to do evidence an intention to defraud, and its whole course of business constitutes such a systematic violation and abuse of the rights and privileges conferred upon it by its charter as to justify either the revocation of its charter or the issuance of a writ of injunction enjoining the further prosecution of such business."

The opinion in this case shows that the state may use the injunctive process to prevent a continuation of fraudulent practices whereby the public is defrauded under the guise and through the instrumentality of a charter. The demurrer admitted the allegations of the bill, and the allegations of the bill are sufficient to show that a considerable portion of the public has been defrauded by false representations, resulting detrimentally to those who acted upon such representations and parted with their money thereunder.    The court will not undertake to supervise or control the affairs of a corporation when it is properly conducting the business granted by its charter unless in case of such corporations as are affected by a public use; but when a corporation in order to obtain business uses its charter in aid of a scheme to defraud people of their money, and the practice is general and affects a large number of people of the state, the state may restrain such fraudulent practices.

In 14 C. J. 1107, section 3711, it is said:

"A corporation may forfeit its charter and right to corporate existence by a misuser of its franchise or corporate powers."

At pages 1108 and 1109, section 3713, it is said:

"The misuser must inflict injury on the public generally, although a forfeiture has sometimes been declared in cases where the violation of the charter has resulted in a public benefit. It is not necessary to prove actual injury to the public; if the inevitable tendency of the act is injurious to the public, a sufficient ground of forfeiture exists. Wherever the transgression of a corporation threatens the welfare of the people, they may summon the offender to answer for the abuse of its franchise or the violation of its corporate duty. And it has been held that any conduct which destroys their normal function and maims and cripples their separate activity and takes away their free and independent action must so far disappoint the purpose of their creation as to affect unfavorably the public interests. Generally speaking, if no public detriment is involved, a statute which provides in general terms that a failure to comply with the provisions of its charter or an abuse of its corporate powers, shall be ground for forfeiture, but omits to specify any particular for which a forfeiture will be granted, will be liberally construed. If it is not shown that the act of corporation is detrimental to the public interest, or if it is shown that the forfeiture of the charter would itself amount to a public misfortune, this will be taken into consideration by the court in determining whether a forfeiture should be granted under the circumstances."

We think, therefore, there was a sufficient case made by the bill to grant injunctive relief at the suit of the state. We think, however, the writ was too extensive in its scope. The state had a right to restrain the defendants from perpetrating fraud upon the public by means of the misrepresentation, and as a means of preventing fraud might restrain the taking in of new members pending the hearing, but we think the organization and the officers thereof had a right to hold their regular meetings and conduct their regular business affecting only themselves. The prayer of the bill was entirely too

broad, and as the writ was coextensive with the prayer of the bill, we think the judgment must be modified, and it will be accordingly modified so as to restrain the appellants only from taking in new members pending the hearing and from making any fraudulent representations to citizens or persons who may seek to become members; but the holding of the Grand Lodge ought not to have been restrained further than is herein indicated. It is said that we ought not to modify or reverse because since the filing of the bill the state has won its suit in *quo warranto* adjudging a forfeiture of the charter, and that, consequently, the judgment should not be reversed here. A certified copy of the judgment of the court below in the *quo warranto* proceedings is exhibited in the brief of the appellee, but is not contained in the record proper in this hearing.

We do not know what the status of the *quo warranto* suit is, or whether an appeal has been prosecuted or not, nor do we know what the record in that suit may contain. It may be that the judgment would be reversed, and, if it should be, it would not be proper to affirm in its entirety the judgment here, but it should be dealt with as though the cause was still pending. If the appellee had desired to present that judgment in bar to this appeal, the proper manner of doing so is to file a plea in bar, or in abatement, as the case might be.

The judgment of the court below will therefore be affirmed in part and reversed in part.

*Judgment modified.*