[Civ. No. 13948.   First Dist., Div. One.   Oct. 6, 1949.]

MOST WORSHIPFUL HIRAM OF TYRE GRAND LODGE OF ANCIENT FREE AND ACCEPTED MASONS (COLORED) OF THE STATE OF CALIFORNIA (a Corporation), Respondent, v. THE MOST WORSHIPFUL SONS OF LIGHT GRAND LODGE ANCIENT FREE AND ACCEPTED MASONS, JURISDICTION OF CALIFORNIA (a Corporation), Appellant.

Goldstein, Lewis & Barceloux, J. Oscar Goldstein, Marvin E. Lewis, P. M. Barceloux and Burton J. Goldstein for Appellant.

Sol A. Abrams and Anthony E. O'Brien for Respondent.

BRAY, J.—Two actions involving conflicting claims of rival colored Masonic organizations were consolidated for trial. The first was an action for conversion in which a cross-complaint was filed asking damages for fraud. The second action was one brought by the Hiram of Tyre Grand Lodge against the Sons of Light Grand Lodge to enjoin the latter from conducting a grand lodge of colored Freemasonry in California.[1] The trial court found against Light in both actions. Thereupon Light attempted to appeal from both judgments. However, this court heretofore granted a motion to dismiss the appeal in the conversion case on the ground that the judg-

---

[1]For brevity, the Hiram of Tyre Grand Lodge will hereafter be referred to as Tyre, and the Sons of Light Grand Lodge as Light.

ment was not final, an accounting being required. (*Most Worshipful Sons etc. Lodge* v. *Sons etc. Lodge*, 91 Cal.App.2d 582 [205 P.2d 722].) The present appeal deals only with the injunction action and the first action will be disregarded.

## FACTS

In 1910, Tyre was incorporated under California law as a nonprofit fraternal organization. It has operated continuously since that time and has at present 20 subordinate lodges with over 2,000 members. It was formed out of three "Blue" lodges in claimed accordance with Masonic law as set forth in "Masonic Jurisprudence" by Mackey. Its constitution contained the following: "The 7th edition of Mackey's Jurisprudence is hereby adopted and made the legal authority on all questions of masonic law not provided for by this Constitution." At one time Tyre sent its grand master to a national congress of grand masters (colored) and once submitted a dispute to the congress, which resulted in Tyre being recognized by the congress as the exclusive authorized colored grand lodge in California.

In 1941, there was a split-up within the congress and several factions each formed their own congress. In 1942, one congress withdrew recognition from Tyre, although a different congress continued to recognize it.

In 1943, three Masonic lodges not connected with Tyre were formed. Based on these lodges and on the contention that Tyre no longer had grand lodge jurisdiction in California because of the withdrawal of recognition by one of the congresses, Light was incorporated the same year under California law as a nonprofit fraternal organization. Its constitution stated, among other things, that it was formed "to do any and all things provided, required and set forth in Mackey's Manual of Masonic Jurisprudence." The congress which had withdrawn recognition from Tyre, in 1944, recognized Light as the exclusive authorized grand lodge in this state. In speaking to prospective members, representatives of Light stated that it was the only authorized colored grand lodge in California. When asked about Tyre, they replied that it did not "amount to much" and was not recognized by the congress. In 1946, many of the members of four subordinate Light lodges withdrew from those lodges and organized new subordinate lodges under Tyre. These new lodges took names similar to or identical with the names of the lodges they had left, and also took with them the money and equipment of

those lodges. Thereupon Light brought the conversion action and Tyre brought this action.

## Issues

On this appeal there seems to be considerable confusion as to just what the issues were and what the court found at the trial. The complaint alleged, in effect, that plaintiff by reason of its prior organization and because of the application of Mackey's Masonic Jurisprudence, was, as between the parties, the only colored Masonic grand lodge entitled to operate in California. It further alleged that defendant deceitfully and fraudulently obtained members from plaintiff by falsely representing that defendant and its subordinate lodges were the only bona fide, sole and exclusive grand and subordinate Masonic lodges of Scottish Rite Masonry of colored persons within the state. The court found in accordance with the allegations of the complaint. There is no allegation nor is there any finding that confusion occurred because of any similarity in the names of the two corporations. Nor was there any proof of such confusion. There is evidence that because of the representations made by defendant's officers, several persons were induced to join defendant's lodges under the belief that Light was the oldest and only authorized colored grand lodge in California. The court's findings and decree were not based on any similarity in names, but, first, on the premise that Mackey's Masonic Jurisprudence bound both parties and the court and that as plaintiff was first formed, it had the exclusive right to operate a colored Masonic grand lodge and subordinate lodges in California; and secondly, that because of the false representations made as above mentioned, defendant had taken into membership actual and prospective members of plaintiff's lodges and would "continue an extensive campaign . . . to induce members of plaintiff corporation and its subordinate Masonic Lodges," to leave them "and join defendant" and that plaintiff's "actual and prospective members" would "be misled and diverted to defendant" because of said false representations.

The court further found that Light should be, and ordered it, restrained from operating a Masonic grand lodge and from using the words "Mason," "Freemasonry," "Masonic," "Ancient Free and Accepted Mason" or similar words; using rituals, badges, uniforms, etc., customarily used by Masonic orders, or practicing Freemasonry in California. The decision was based upon two grounds: (1) that plaintiff had an

exclusive right to operate as a grand lodge of colored Masonry in California, under Masonic law; and (2) that on principles of unfair competition defendant was misleading the public by misrepresenting that it was the only colored Masonic grand lodge and subordinate lodges entitled to function in California and also giving the impression that it was the oldest, thereby obtaining the advantage of plaintiff's reputation, built up over many years.

## Masonic Law

Mackey's Masonic Jurisprudence declares, in effect, that in a given state the first grand lodge to be formed acquires exclusive Masonic jurisdiction within that state. Plaintiff contends that the courts are bound by this law, particularly as in its constitution Light makes reference to Mackey's Masonic Jurisprudence. Defendant contends that such reference merely meant that it would accept Mackey in its relations with its members and subordinate lodges, and that it is obvious that it would not incorporate as a grand lodge and then adopt a rule which immediately would put it out of existence, and therefore it has not agreed to be bound to this extent by Mackey; secondly, that the courts are not bound by Mackey; and thirdly, that even applying Mackey, as one of the congresses had withdrawn recognition from Tyre, California at the time of Light's organization was open territory for the establishment of a grand lodge.

We agree with defendant that the reference in its constitution to Mackey did not constitute an agreement (by Light) to be bound by Mackey in its dealings with Tyre. It is plain that such reference was to govern its interior relationships only.

As to the third point, the evidence shows that there was a split in the Masonic congress and that Tyre was recognized by one element of this split and Light by the others. Moreover, on conflicting evidence the trial court found, contrary to defendant's contention, that the Masonic congresses had no power over individual grand lodges, and that a congress's refusal to recognize a grand lodge did not deprive the latter of any standing as a true Masonic grand lodge in its own territory. As there is substantial evidence to support this finding we are bound by it.

On the second point, the courts are not bound by Masonic law for several reasons: (1) defendant has not referred to, nor have we been able to find, any case in which a court has determined a dispute between two Masonic grand

lodges by reference to Mackey other than *Most Worshipful King Solomon Lodge of Ancient Free & Accepted York Masons* v. *Most Worshipful Prince Hall Grand Lodge Free & Accepted Masons,* 76 Colo. 469 [232 P. 664], in which it was agreed at the trial by both parties that Mackey's was the guiding law. In a later case involving conflicting claims of two Masonic grand lodges, the Colorado Supreme Court said: "Plaintiff proved that it operated according to Mackey's textbook on Masonic Jurisprudence, and introduced portions of the compilation in evidence, to show that under the laws, rules, and regulations of Masonry defendant is a Masonic outlaw in Colorado. The proof was confined to plaintiff's adherence to Mackey; it was not shown that defendant or that lawful Masonic lodges as a whole are so governed. Such proof was insufficient to warrant us in relying on Mackey. To make it so, it was necessary to show that not only one of the parties but both were so bound or under a legal obligation to observe its precepts. We are therefore relegated solely to the laws of the state to decide the case. Masons may or may not know that their order is subject to Mackey's Masonic Jurisprudence, but it is not a matter of such common or general knowledge as to warrant the court in taking judicial notice thereof. 15 R.C.L. p. 1058; *Utah Nursery Co.* v. *Marsh,* 46 Colo. 211 [103 P. 302]. The fact that Masonry is a secret order only emphasizes the impropriety and impossibility of our taking judicial notice of its inner workings." (*Most W. Prince H. Grand Lodge* v. *Most W. Hiram Grand Lodge,* 85 Colo. 17 [273 P. 648, 651-2].)

Secondly, if Mackey's does bind the courts, we are faced with the interesting situation that plaintiff is not the first Masonic grand lodge established in California. ▮ It was stated many times at the trial, and the court must take judicial knowledge of such a well known fact, that long prior to 1910 there was established and ever since has existed a grand lodge of white Masons in California. ▮ Mackey makes no distinction as to color. Hence, if Mackey does apply, neither party would have any right to exist. It may be that there has grown up an organization of colored Masonry separate and parallel to the white organization. If so, it is not under the terms of Mackey's, and hence in order that disputes between colored organizations might be settled in accordance with rules similar to Mackey's, such organizations would have to agree in some way that their disputes might be so settled. Moreover, if a rule similar to Mackey's exists binding col-

ored lodges, plaintiff failed to bring itself under it as it failed to show that it was the only colored grand lodge in existence in California in 1910, at the time of its formation. Defendant offered at one time of the trial to prove that plaintiff was neither the first colored grand lodge to be organized here, nor the only one existing in 1910, but the court declined to permit it to do so. It therefore appears that the evidence fails to establish Mackey's as the governing law, nor is there any legal authority for applying Mackey's in a case where one of the grand lodges has refused to be bound by it in a dispute with a rival grand lodge.

## UNFAIR COMPETITION

It is now well established that, as said in *Talbot* v. *Independent Order of Owls*, 220 F. 660, 661 [136 C.C.A. 268] : "An established voluntary association for religious, fraternal, benevolent, or social purposes is entitled to an injunction against the use by another person, association, or corporation of its name or emblem, and of any name or emblem so similar to its as to be likely to create confusion, or to deceive or induce persons to join or treat with the latter as the former, because such a name or emblem in effect defrauds the former and the persons so confused or deceived. [Citing many cases.]" See, also, *Purcell* v. *Summers*, 145 F.2d 979, where there is a long list of cases in which injunctions have issued to prohibit use of names similar to those of previously established fraternal organizations.

However, there was no evidence of confusion in the names nor any finding to that effect. The court did not enjoin the defendant from using "Sons of Light" but from using any words which indicated it was connected with Masonry. This only could be on the theory that plaintiff had the exclusive right to practice Masonry in 'California.

It is conceded and the court found that both plaintiff and defendant are "clandestine" Masonic lodges. It is difficult to understand how a court can grant an exclusive right to operate a clandestine lodge on the ground that the lodge which is first formed has the sole right to exist. However, while the court cannot grant an exclusive right to the first formed lodge it can prevent a second lodge from misrepresenting so as to give the impression that it is the other lodge or has an exclusive right.

There is substantial evidence to support the court's findings (1) that Tyre was organized long prior to the organization of Light; (2) that it had established with the public

a good reputation as a fraternal order (this is a reasonable inference to be drawn from, among other matters, the length of its existence and the increase of its membership); (3) that defendant misrepresented to members and prospective members that it was the only colored Masonic group entitled to function in California and led them to believe it was the older organization; (4) that because of such misrepresentations confusion had occurred, harm had been caused to plaintiff, and continued to be caused it. There was testimony at the trial that persons had joined Light thinking it was the older organization, not because of any similarity in names but because of the representations of defendant to that effect.

Plaintiff cites section 538b of the Penal Code which makes it a misdemeanor to wear the badge, insignia or apparel of any fraternal organization unless ''entitled to wear and use the same under the constitution, by-laws or rules and regulations'' of such organization. Just how this helps plaintiff it is difficult to understand. The interpretation of this section claimed by plaintiff would prevent plaintiff from using Masonic badges, insignia or wearing apparel, inasmuch as plaintiff is not included in the constitution, by-laws, rules or regulations of the older white order.

It is not necessary for us to consider the question of whether the use of generic terms such as ''Mason'' or ''Masonic'' can be enjoined in California, and the effect of *American Auto. Assn.* v. *American Auto. Owners Assn.,* 216 Cal. 125 [13 P.2d 707], for the reason that these terms in defendant's name were not enjoined by the lower court on the theory that they caused a similarity with plaintiff's name but on the erroneous theory that plaintiff had the exclusive right to practice Masonry in California.

We have been cited to no case, nor have we been able to find any in which a court has assumed the right to give exclusive lodge jurisdiction to one clandestine fraternal organization over another, with two exceptions. The first is the case of *Most Worshipful King Solomon Grand Lodge* v. *Most Worshipful Prince Hall Grand Lodge, supra* (232 P. 664), where the parties stipulated that Mackey's Masonic Jurisprudence was determinative of the rights of the parties. The second are cases from jurisdictions like Oklahoma, where there is an express statute to the effect that the first fraternal order of a given character to be organized in the state

has the exclusive right to operate such order. (See *Saint Joseph's G. L.* v. *Most W. Saint John's G. Lodge,* 193 Okla. 283 [143 P.2d 119], and *John A. Bell Grand Lodge* v. *Most W. St. John's G. L.,* 89 Okla. 112 [214 P. 114].) Colorado has a similar statute. (See *Most W. Prince H. Grand Lodge* v. *Most W. Hiram Grand Lodge, supra* [273 P. 648].)

In *Grand Lodge of I. B. & P. O. O. Elks* v. *Grand Lodge, I. B. & P. O. O. Elks,* 50 F.2d 860, cited by plaintiff, the court enjoined the defendant lodge, which was comprised of withdrawees from the plaintiff, from using the name which was identical with that of plaintiff except for the word "of" on the ground that the use of a name so similar was a fraud upon the original order and upon the public. It is significant, however, that the court only denied the defendants the right to use a name similar to that of plaintiff, but did not deny it the right to operate an Elks lodge, even though it pointed out that the evidence showed that all colored Elks lodges in the United States have recognized the jurisdiction of a national grand lodge, and have expressed their rights as such under its dispensation. (The colored Masonic orders have not done so.)

In *Most Worshipful W. S. G. L.* v. *Most Worshipful Prince Hall Grand Lodge* (1947), 160 Pa.Super. 595 [52 A.2d 333], there is related the early history of Negro Masonic lodges in the United States. Petitioners, a group of colored persons, none of whom were members of the Masonic fraternity, petitioned the court for a charter of a corporation to practice Masonry in Pennsylvania. The court stated (p. 335 [52 A. 2d]) : "The issue here is fraudulent representation, and not exclusive right, although" defendant "has such exclusive right." It then held that the incorporation of such a group who not being Masons had no right to organize as such, would be a fraud on the already existing defendant lodges and on that ground refused to grant a corporation charter to petitioners. It is obvious that this decision is not in point in our case.

The position of the courts as regards rival fraternal organizations is well stated in *Cuney Grand Lodge* v. *State* (1926), 142 Miss. 894 [108 So. 298, 302] : "The court cannot judicially know what the principles and degrees of free Masonry are, or of any particular brand of doctrine known as free Masonry, if there be differences of organization and principles. That is a matter with which the state is not concerned so long as

no fraud is used to deceive a person solicited to join or be received into these orders.''

■ The injunction in this case went too far. It should have been limited to prohibiting defendant, its officers, agents, servants and employees from representing that its grand lodge and its subordinate lodges were or are the only bona fide grand lodge and subordinate lodges of Freemasonry in California, or making any representation or performing any act which would tend to confuse, in the minds of the public, or prospective members, its organization with plaintiff and its subordinate lodges, or by misrepresentation to attempt to lure away plaintiff's members.

### ESTOPPEL

■ Defendant on this appeal attempts to raise the doctrine of laches. It was raised neither by the pleadings nor at the trial. Hence it cannot be considered here.

The judgment is reversed with directions to the trial court to enter a judgment in accordance with the views here expressed.

Peters, P. J., and Ward, J., concurred.

A petition for rehearing was denied November 5, 1949, and the following opinion was then rendered:

THE COURT.—It is ordered, in the interests of justice, that the costs of preparation and filing of reporter's transcript and the clerk's transcript herein be divided equally between the parties. As to all costs, each party shall bear its own.

Respondent's petition for a hearing by the Supreme Court was denied December 1, 1949.