### INTERNATIONAL FREE AND ACCEPTED MODERN MASONS, a Delaware Corporation, et al., Appellants,

v.

### MOST WORSHIPFUL PRINCE HALL GRAND LODGE, FREE & ACCEPTED MASONS OF KENTUCKY, et al., Appellees.

Court of Appeals of Kentucky.

Nov. 14, 1958.

James A. Crumlin, Louisville, Jesse E. Williams, Detroit, Mich., for appellants.

Henry J. Tilford, Charles W. Dobbins, Louisville, for appellees.

STANLEY, Commissioner.

On the complaint of the appellees, Most Worshipful Prince Hall Grand Lodge Free & Accepted Masons of Kentucky, the trial court enjoined the appellant, International Free and Accepted Modern Masons, and its representatives by name and all others

"(1) From establishing or conducting lodges of Masons or auxiliaries thereof within the State of Kentucky wherein the words 'Free and Accepted· Masons,' or the words 'Masonic Lodge,' or the word 'Mason' or a colorable imitation thereof are used in any manner whatsoever;

"(2) Within the State of Kentucky, from holding forth or stating that the defendant, International Free and Accepted Modern Masons, is a grand lodge of Free and Accepted Masons and from using or employing rituals, ceremonies, names, insignia, emblems, badges, symbols, signs, paraphernalia, or designations of an organization of· Masons; and from using or attempting to use any of the secret work or formulas of the plaintiff, Most Worshipful Prince Hall Grand Lodge Free and Accepted Masons of Kentucky, or the subordinate lodges chartered and established under its jurisdiction, and from using or displaying any insignia, emblems, badges, symbols, signs and paraphernalia of the plaintiff Grand

Lodge or the subordinate lodges established and chartered by it."

For convenience and brevity, the appellants will hereinafter be referred to as "International Masons" and the appellees as "Prince Hall Masons."

■ The case has been and is to be decided under the doctrine of unfair competition, a term which through the development of the law has, in many applications, become a misnomer. The application here is of a fundamental principle of protection from misappropriation or misrepresentation through unprivileged imitation of a name and of emblems and insignia. The right of a fraternal order to this protection is well recognized. Creswill v. Grand Lodge Knights of Pythias, 225 U.S. 246, 32 S.Ct. 822, 56 L.Ed. 1074; Grand Lodge I. B. & P. O. Elks v. Grand Lodge I. B. P. O. Elks of World, 4 Cir., 50 F.2d 860; Nims, Unfair Competition and Trade-Marks (4th Ed.), § 86; 10 C.J.S. Beneficial Associations § 12. We have a statute imposing a penalty upon any person who willfully wears the badge of Masons or other named organizations without being entitled to wear it. KRS 434.060(2). Here, priority of origin and incorporation in Kentucky and in territorial use, as well as confusion and misrepresentation, are the bases of the exclusive right claimed and adjudged to belong to the appellees, Prince Hall Masons.

■ As is well known, the order of Free and Accepted Masons is an ancient and honorable secret fraternity. Its origin is lost in antiquity. The Masonic legend is that it began with the craftsmen at the building of King Solomon's Temple. Documentary rolls and other records, still preserved, of the Fourteenth Century and later centuries prove the establishment and continuity of Masonic lodges at least from such times down to the establishment of the premier Grand Lodge of England in 1717. From that time previously separate lodges became subordinate affiliates of Grand Lodges. All regular grand and subordinate lodges throughout America, directly or indirectly, have sprung from this mother grand lodge.[1]

A brief history of Freemasonry among colored people in America, as shown in this record and by historical references and in several judicial opinions, seems appropriate.

Prince Hall, a free Negro, a native of Barbados, West Indies, became a worthy resident of Massachusetts. He knocked and the door of Masonry was opened to him by a British Military Lodge in Boston in the year 1775. He was the first man of African descent to become a Master Mason in America. Hall became a Revolutionary War patriot, receiving recognition from General Washington and other leaders. After the war, Hall and his brethren were refused a charter by the Provincial Grand Lodge of Massachusetts because of their race. Upon their application, the Grand Lodge of England, "under authority of His Royal Highness, Frederick, Duke of Cumberland, Grand Master of the Most Ancient and Honorable Society of Free and Accepted Ancient Masons," granted them a charter on September 29, 1784, under the name of African Lodge No. 459, to be opened in Boston. That was done in May, 1787. Later, African Lodge No. 459 declared itself to be a Grand Lodge with jurisdiction throughout the United States, and the Grand Lodge of England granted a patent or provincial powers to the African Lodge as such. After the death of Prince Hall in 1807, the colored Masonic grand lodges changed their names in his honor and many succeeding lodges have adopted it.

As time went along, Prince Hall Grand and subordinate lodges of colored Masons were chartered and organized throughout the United States, Canada and other countries, all of them springing from African

---

1. Encyclopedia Britannica, "Freemasonry."

Lodge No. 459. These historical facts are more or less confirmed by several judicial opinions. See, Prince Hall Grand Lodge of F. & A. Masons v. Most Worshipful King Solomon Grand Lodge, A. F. & M. (Colored) 62 N.M. 255, 308 P.2d 581; Most Worshipful Widows' Sons Grand Lodge of Ancient F. & A. Colored Masons of Pennsylvania v. Most Worshipful Prince Hall Grand Lodge of F. & A. Masons of Pennsylvania, 160 Pa.Super. 595, 52 A.2d 333; Most Worshipful Prince Hall Grand Lodge, Free & Accepted Masons, of Georgia v. Supreme Grand Lodge, Modern Free & Accepted Colored Masons of the World, D.C., 105 F.Supp. 315.

According to the record in this case and "Official History of Freemasonry among Colored People in North America," by Wm. G. Grimshaw,

> "In the year 1850 Brother R. H. Greaves, Deputy Grand Master of the Grand Lodge of the State of Ohio and its jurisdiction thereunto belonging, warranted and established Mount Moriah Lodge No. 6, F. & A. M., now No. 1, located in the City of Louisville, Ky. This was the first Lodge organized in the State. Owing to the fact that this organization occurred during slavery times, none but free men were made Masons."

The individual appellees have joined in the prosecution of the present suit on behalf of all members of Mount Moriah Lodge No. 1, F. & A. M.

In 1867 Mount Moriah and two other lodges in Kentucky, which had also been chartered by the Ohio jurisdiction, established in accordance with the rules and practices of Freemasonry, "The Grand Lodge of Free and Accepted Masons of Colored Men of the State of Kentucky." It was incorporated in Kentucky on January 11, 1901, and by amendment of its articles of incorporation in January, 1951,

changed its name to the present name of "Most Worshipful Prince Hall Grand Lodge, F. & A. M. of Kentucky".[2] As such Grand Lodge, it has chartered ninety-two subordinate lodges in the State. The evidence submitted as the basis of the summary judgment herein is in full accord with the foregoing historical narrative.

Thus, the appellees trace their origin and continuity in Kentucky as legitimate Masonic bodies for a period of more than 107 years.

On the other side of the case, International Lodge, and the individual co-appellants have contended they are legitimate and honorable Freemasons and had a Kentucky source earlier than that of the appellees. International Lodge was incorporated in Delaware in the year 1950, but its headquarters are in Detroit, Michigan.

William Banks, who is "The Supreme Grand Master" of International Lodge, deposed that his organization was in existence long before Prince Hall Lodge was organized in Kentucky or any other state; that International had its origin in England in 1716, while Prince Hall Lodge developed "as a renegade from a legitimate lodge of Masons in Virginia." No authority is given to sustain this broad statement, and it is denied of record.

In rebuttal, the affidavit of Harry A. Williamson, an outstanding historian of Negro Masonry, describes the lineage of Prince Hall Grand Lodge as above outlined. He adds that after the organization of the first Grand Lodge of Masonry in England in 1717, a new grand lodge was organized there in 1751, and in order to distinguish itself from the original, it adopted the name, "The Ancient Grand Lodge of England" and referred to the older body as "Modern." The two lodges, however, merged in 1813, and the word "Modern" disappeared from the legitimate masonry vocabulary. This is recounted in Most

---

2.   The use of the name Prince Hall among colored Masons seems to be general throughout the country.

Worshipful Widows' Sons Grand Lodge of Ancient Free and Accepted Colored Masons of Pennsylvania v. Most Worshipful Prince Hall Grand Lodge of Free and Accepted Masons of Pennsylvania, 160 Pa. Super. 595, 52 A.2d 333. The reoccurrence of the use of the word "Modern" was in 1950 with its adoption as part of International's name. Other Masonic historians deposed likewise.

■ As to the Kentucky lineage and operation, Banks recited in his affidavit that he was initated in St. John Masonic Lodge in 1925 in Geneva, Kentucky, (a hamlet in Henderson County) and his father had been initiated in the same lodge about the year 1901. His grandfather, Mitchell Banks, who was a mulatto, had some half-brothers who were white Masons; and since he could not be accepted in a white lodge, his half-brothers had helped him to set up a Negro Masonic lodge.[3] Banks left Kentucky at an undisclosed time and moved his membership from lodge to lodge. He states his "lodge" at Geneva, Kentucky, "ceased to operate," but does not give the date. There is nothing in the record to show any connection of this reported organization and the appellants. In 1939 Banks, in protest of certain practices of his Detroit lodge, left it and became the head of "Modern Free and Accepted Colored Masons" at the request of a man who had been its head for 35 years. The name was changed in 1950 to the present name of International Free and Accepted Modern Masons. As the chancellor observed: "It is appropriate to infer from Mr. Banks' affidavit that for a considerable period of years there was no activity in Kentucky either by the defendant or by any claimed predecessors."

In 1953 and afterward International Grand Lodge established several subordinate lodges in Louisville and Covington.

■ In summary, the appellees establish a legitimate Masonic lineage and continu-ous operation of Mt. Moriah lodge in Kentucky from 1850, and the appellee, Prince Hall Grand Lodge, from 1867. The appellants establish an origin and lineage that are at most of dubious legitimacy. If the dubiousness and clandestine character be overlooked, it is quite certain that the questionable Kentucky lodge which Banks says his grandfather organized and of which he was a member in Geneva, Kentucky, soon died or "ceased to operate," as he says. If for the sake of argument we disregard the absence of any resurrection and any connection, the appellants run up against one of the principles of the doctrine of unfair competition that where a right to use a trade name is abandoned or forfeited, the first to reappropriate the name acquires priority. Nims, Unfair Competition and Trade-Marks, § 408; 10 C.J.S. Beneficial Associations § 13; 87 C.J.S. Trade-Marks, etc., § 30.

■ Implicit in the foregoing historical treatise upon the point of priority of use of the names is the idea of confusion. We consider that matter of confusion more particularly.

The appellant Grand Lodge is known, as stated, as "International Free and Accepted Modern Masons." The name of the appellee Grand Lodge is "The Prince Hall Free and Accepted Masons." It is largely a matter of impression or mental reaction whether under the circumstances there is such similarity of names and symbols as is likely to confuse and deceive persons with whom the particular organizations of like character deal concerning the identity of the respective organizations. Grand Lodge of Improved, Benevolent & Protective Order of Elks of the World v. Grand Lodge, Improved, Benevolent and Protective Order of Elks of the World, 4 Cir., 50 F.2d 860; 87 C.J.S. Trade-Marks, etc., §§ 69, 70. Cf. Churchill Downs Distilling Co. v. Churchill Downs, 262 Ky. 567, 90 S.W.2d 104; and U-Drive-It Co. v. Wright

---

3. The court may not take judicial notice that this was illegal according to ancient Masonic law, and neither the "lodge" nor its members really became Masons.

& Taylor, 270 Ky. 610, 110 S.W.2d 449. The cardinal and characteristic words in the names of both of these parties are "Free and Accepted Masons," the foremost descriptive word being "Masons." The term and what it signifies is the most valuable asset of the Prince Hall Lodge, which it has sought to protect. This distinctive character in names was recognized in Prince Hall Grand Lodge of Free and Accepted Masons, etc. v. Most Worshipful King Solomon Grand Lodge, A. F. & A. M. (Colored), etc., 62 N.M. 255, 308 P.2d 581, as being so strikingly similar as to cause confusion, tend to deceive the public and to induce persons to join one institution when they intended to join the other. Consequently, said the court, a party first acquiring the right to the name should be protected from any invasion of the right of exclusive use of it, also in the exclusive use of insignia, symbols, emblems, etc. commonly used by it in the practice of Masonry. Many cases are cited in the opinion, including of particular application, Most Worshipful Prince Hall Grand Lodge v. Most Worshipful Hiram Grand Lodge, 85 Colo. 17, 273 P. 648; Supreme Grand Lodge, Modern Free and Accepted Colored Masons of World v. Most Worshipful Prince Hall Grand Lodge, Free and Accepted Masons, Jurisdiction of Georgia, 5 Cir., 209 F.2d 156. There are other pertinent cases, two of which may be specially noted.

Grand Lodge of Improved, Benevolent and Protective Order of Elks of the World v. Grand Lodge, Improved, Benevolent and Protective Order of Elks of the World, 4 Cir., 50 F.2d 860, 864, has been regarded by several courts as a leading case. In that case representatives from Virginia became aggrieved at the action taken by the Grand Lodge of Elks, which was a New Jersey corporation, and attempted to secede from the Order and set up an independent Order under practically the same name. In holding that the original Grand Lodge was entitled to enjoin the new one, Judge John J. Parker wrote for the court:

"In the case at bar, complainant for more than a quarter of a century had enjoyed the use of its name and had built up thereunder a large fraternal order among the colored people of the United States. Its fraternal, charitable, and educational activities had commended it to the public, and had given membership therein a value to the people from whom it recruited its membership. It was entitled to enjoy the fruits of the organization which it had built up, unhampered by the efforts of others to appropriate to themselves its corporate name with the advantages thereto attaching. If the Virginia members were dissatisfied, they, of course, had a right to withdraw and organize a new order; but they had no right, if they did so, to adopt the name of the original order or to hold themselves out as a branch of that order. To do so constitutes a fraud upon the original order and upon the public, and, if allowed, would result in enabling the rival organization to appropriate to itself the advantages which the original order had built up through years of effort. A more glaring example of unfair competition could not well be imagined."

In Most Worshipful Prince Hall Grand Lodge, Free & Accepted Masons, of Georgia v. Supreme Grand Lodge, Modern Free & Accepted Colored Masons of the World, D.C., 105 F.Supp. 315, 319, the court found the plaintiff and its legitimate predecessors had a favorable and continuous existence in America since about the year 1776, and as an organization in Georgia since about 1866, and that the defendant came into existence later. The court observed that the defendant had been completely dominated by one man as its "Supreme Grand Master" and that its interest was "pretty largely that of insurance and burial aid." The court enjoined the defendant and its representatives from using the words "Free and Accepted Masons" or "Masons" in its activities, and from appropriating the

plaintiff's insignia, etc. The judgment was affirmed in Supreme Grand Lodge, Modern Free and Accepted Colored Masons of World v. Most Worshipful Prince Hall Grand Lodge, Free and Accepted Masons, Jurisdiction of Georgia, 5 Cir., 209 F.2d 156.

The appellants rely upon Most Worshipful Grand Lodge A. F. & A. M. of West Virginia v. Most Worshipful Prince Hall Grand Lodge of West Virginia, 90 W.Va. 424, 111 S.E. 309. The case is distinguishable. There had been a schism and two grand lodges claimed the right to use substantially the same name. Both were composed of legitimate members of the Order and there was no question that anyone was an impostor. The court held one lodge could not enjoin the other. Expressions in the opinion imply that the decision would have been different if there had not been a former connection between the two organizations. Such distinction appears in Most Worshipful Hiram of Tyre Grand Lodge of Ancient Free & Accepted Masons (Colored) of State of California v. Most Worshipful Sons of Light Grand Lodge Ancient Free & Accepted Masons, Jurisdiction of California, 94 Cal.App.2d 25, 210 P.2d 34, which also involved a schism and the claims of two Negro Grand Lodges of the Masonic order to be the legitimate body in California. The court reviewed a number of fraternal order cases and held on the ground of prior organization and function within the state that the first Lodge was entitled to enjoin the second Lodge from representing that it and its subordinate lodges were the only bona fide lodges of colored Freemasonry in the state and from doing any act tending to confuse the public or prospective members.

We look to the important factors of deception and injury. See Churchill Downs Distilling Co. v. Churchill Downs, Inc., 262 Ky. 567, 90 S.W.2d 1041; Acy v. Whaley, 281 Ky. 400, 136 S.W.2d 575.

The Supreme Grand Master of International Lodge, M. V. Banks, stated that by using the word "Modern" in connection with "Free and Accepted Masons," it has made "a special effort to make certain that prospective members understood that" it and the Prince Hall group of lodges were not the same organization. Nevertheless, it is affirmatively stated in affidavits of merit that International had used and employed rituals, insignia, etc. which are the same as those used by the appellants. It is further shown that affiants had been in fact misled into joining the appellants' lodges.

Exhibits of documents and soliciting circulars issued by International Lodge conspicuously carry the name "International Masons" and "International F. & A. M. Masons." These advertisements bear all the well-known symbols and insignia of Freemasonry. They say in conspicuous letters that "International F. & A. M. Masons" is "The Greatest Masonic Order in the World" and that it is "A worldwide Fraternity" which offers "The Greatest Fraternal Benefits Known to Civilized Man!!!" The appellant, while denying it is engaged in the insurance business, admitted that it issues to its members (as shown by a sample) an "Endowment Certificate" which contains an agreement to "donate" the stipulated sum to the named "beneficiary" upon the death of the member.

The appellants' organization accepts women into membership and the appellees do not, although there is an affiliate organization, known as the Order of the Eastern Star, for female members of Master Masons' families.

█ We have had no difficulty in concluding that the injunction was properly granted.

█ The appellant has claimed that it and its subordinate lodges exist for "the attainment and promotion of benevolent, fraternal and charitable objectives and the establishment of certain principles of mo-

rality in their members." Mr. Banks, in his affidavit of merits, lists some of such worthy accomplishments. We would not interfere with anyone in his impulses of fraternalism or benevolence, such as the appellant claims. No one and no organization has a monopoly on doing good, but the right must be lawfully exercised and not carried on under a deceptive or confusing name that belongs to another. The order of injunction in this case does not in any way prevent the accomplishment of the same objectives under some name or designation that does not infringe upon the name and rights of the appellees.

█ Finally, we take note of the appellants' point that the trial court should not have rendered a summary judgment based upon affidavits and without formal evidence. The argument rests primarily upon the contention that the history of Prince Hall Lodge was hearsay on the part of the affiants. All of the affiants disclosed qualification to speak concerning that history. Throughout the record are *admissions* of essential statements of fact which manifest prima facie that there was "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03.

█ Concerning the point that the statements of the affiants were but hearsay, it seems to us they come within the rule laid down long ago in Morris v. Harmer, 7 Pet. 554, 32 U.S. 554, 8 L.Ed. 781, as stated in 20 Am.Jur., Evidence, § 467, that general reputation and tradition are admissible as proof of historical facts of general or public notoriety, at least where the issue involves matters that are ancient or, at any rate, so far of the past that proof is not available. Such evidence may be established by historical works of known character and accuracy written by deceased authors or living authors who are not within reach of the process of the court. See also, Wigmore on Evidence, § 1597; 20 Am.Jur., Evidence, §§ 60, 66;

31 C.J.S. Evidence § 91, note 51. Cf. Bertram v. Witherspoon's Adm'r, 138 Ky. 116, 127 S.W. 533.

The judgment is affirmed.