# Richmond.

ISAAC M., PHILLIPS, JOHN CLARK, JAMES A. WASHING-
TON, AND WIDOW'S SON LODGE NO. 14, A. F. &
A. MASONS, COLORED v. WIDOW'S SON
LODGE NO. 54, A. F. & A. MASONS.

March 21, 1929.

528

The opinion states the case.

*J. Winston Read* and *R. H. Pree*, for the appellants.

*J. Thos. Newsome, J. C. Robertson* and *W. R. Walker*, for the appellee.

PRENTIS, C. J., delivered the opinion of the court.

Widow's Son Lodge No. 54, A. F. & A. M., filed its bill making these allegations, substantially: ' That it, No. 54, was and is a local lodge of the Grand Lodge of Virginia, A. F. & A. Masons, an unincorporated fraternal association, with authority to function in Newport News, Virginia; that it had exercised its function for many years, and had no existence other than that granted by the said Grand Lodge; that it participated through its delegates in all the meetings of the Grand Lodge, and was bound by such rules, regulations and laws as were duly adopted; that an endowment plan had been adopted by the Grand Lodge, after which a number of the members of Widow's Son Lodge No. 54 had complied with all requirements and had received policies of insurance under such endowment plan; that thereafter the defendants, some of whom were officers and affiliated with Widow's Son Lodge No. 54, arbitrarily, unlawfully and without any color of authority, voted and decided to rescind, disobey, annul and declare ineffective the mandate requiring all local lodges to participate in an endowment created for the benefit of local lodges then holding allegiance to the Grand Lodge of Virginia, A. F. & A. M.;

that having so voted they took possession of all of the property of Widow's Son Lodge No. 54, refusing to abide by the decisions of the Grand Lodge, and thereafter proclaimed themselves Widow's Son Lodge No. 14, A. F. & A. M., Colored, under which name they undertook to hold the property of Widow's Son Lodge No. 54.

The chief item of property so alleged to have been taken and illegally withheld by the defendants was a deposit of $1,395.00, with interest at the rate of four per cent per annum from the 31st day of December, 1926, deposited in the Crown Savings Bank.

It is said in the brief for the appellants that "the title to and possession of this money, in the opinion of petitioners, constitutes the real and only issue in this cause."

This bill was answered by the defendants, categorically denying several of the allegations of the bill, but admitting the substantial facts alleged, to-wit: that they had taken over the property of Widow's Son Lodge No. 54, had severed all allegiance to the old Grand Lodge, and had organized Widow's Son Lodge No. 14, A. F. & A. M., Colored, and become affiliated with a new and different Grand Lodge which had been recently organized.

The testimony shows that the objectionable endowment feature had been approved at the Grand Lodge session in 1918, and again in 1922, and was being gradually put into effect, though there was much objection to it which resulted in the withdrawal on January 9, 1925, of those members of No. 54 who thereafter organized No. 14 and severed their allegiance to the old Grand Lodge. The withdrawal on that date was accomplished at a meeting of which due

notice seems to have been given, when a vote was taken and the motion carried by a vote of thirty-four to three. One member present failed to vote. The effect of this action is thus characterized by James A. Washington, one of the defendants:

"The lodge voted with only three dissenting votes, as I said before, to receive and adopt a report to cease affiliation with the Grand Lodge, as upon the report of this committee, claiming that the adoption of compulsory endowment had not been according to law, as being forced upon us without being duly and legally adopted."

Immediately after this action on the 9th of January, that is, on the next day, January 10, 1925, two of these defendants, Phillips and Washington, Phillips having been the Grand Master of No. 54 and Washington Secretary, wrote this letter to the cashier of the Crown Savings Bank:

"Dear Sir:—At the regular meeting of our lodge, held Friday evening, January 9—due notice of the same having been sent to the members—it was decided—three members dissenting—that we would no longer remain a part of the membership working under the old Grand Lodge. We are now known as Widow's Son Lodge No. 14 (instead of No. 54), and all the funds held in your bank on deposit for Widow's Son Lodge No. 54 (which is no longer in existence) are to be immediately transferred to Widow's Son Lodge No. 14."

It appears that at the time of this meeting there were 114 members in good standing of Widow's Son Lodge No. 54, of whom only thirty-eight were present at the meeting of January 9, 1925. It is shown that there were at least nineteen or twenty of the members of

No. 54 who continued thereafter to function as local lodge No. 54 and affiliated with the same Grand Lodge as before, who have held meetings and are apparently in good standing. These loyal members were the substantial complainants in the court below and are claiming title for the lodge to the property and funds of Widow's Lodge No. 54.

Many depositions were taken. The arguments are somewhat elaborate, but in view of the facts which we have stated we think it unnecessary to encumber this opinion with a recital of or discussion of such of the differences as to the legal questions raised which we consider immaterial to the real controversy.

The chief argument for the appellants seems to be based upon the contention that the endowment plan was not properly adopted, and hence that they were not bound by it, and yet, somewhat inconsistently as it seems to us, they at the same time claim that the endowment plan put them out of the order and without further action suspended them because they had failed to comply with the requirements made by the endowment plan. They, therefore, and thereupon claimed that they continued to constitute the true Lodge No. 54, with power to do as they pleased, including the right to ignore all of their other brethren, and to affiliate with the new Grand Lodge and take all of the property of No. 54 with them. The answer to this is that at the time of the vote they were either in or out. If legally out, they had no further interest, while if they were then legal members of the order, and in control of Lodge No. 54, they were still governed by that section of the Constitution of the Grand Lodge, which provides that when a lodge ceases to function, all of its property vests in the Grand Lodge, in trust,

upon condition that if and when such lodge shall be reorganized the property will be returned.

■ If the endowment plan had been properly adopted, then these rebellious members had either been or were subject to suspension in accordance with the laws of the order. After legal suspension, they had no further interest in Lodge No. 54 or its property.

■ Whether the endowment plan was legally adopted or not is immaterial in this case, because, in either event, their action in undertaking to transfer all of the funds of Lodge No. 54 to themselves and to Widow's Son Lodge No. 14, was without warrant of law and shocks the conscience.

■■ The decree of the court complained of, which held that Widow's Son Lodge No. 54 continued to function, even after the action of January 9, 1925, that its loyal members continued to be affiliated as Lodge No. 54 with the old Grand Lodge, and that the title to the money and property remains with Widow's Son Lodge No. 54, is clearly right in every respect. If before their withdrawal from Lodge No. 54 these protesting members had any legal claim to any part of these funds, such claim should have been legally asserted. By their revolutionary secession on January 9, 1925, such possible rights have been forfeited.

*Affirmed.*