9 N.J. Super. 206 (1950)
75 A.2d 740
THEODORE W. ZALESKI, AND OTHERS, PLAINTIFFS-RESPONDENTS,
v.
LOCAL 401 OF THE UNITED ELECTRICAL RADIO AND MACHINE WORKERS OF AMERICA, ETC., DEFENDANT-APPELLANT, AND THE SINGER MANUFACTURING COMPANY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued August 28, 1950.
Decided October 2, 1950.
*207 Before Judges JACOBS, BIGELOW and WM. J. BRENNAN, JR.
Mr. Samuel L. Rothbard argued the cause for plaintiffs-respondents (Messrs. Rothbard, Harris & Oxfeld, attorneys, and Mr. Abraham L. Friedman, of counsel).
Mr. Morton Stavis argued the cause for defendant-appellant (Mr. William Rossmore, on the brief).
The opinion of the court was delivered by BIGELOW, J.A.D.
The interlocutory injunction that is the subject of this appeal must be vacated. The litigation is *208 concerned with the method of paying dues to a labor union local. The plaintiffs and most, perhaps all, the members severally empowered their employer to deduct or "check-off" the dues from their wages and pay them to the Local. The plaintiffs, becoming dissatisfied with this procedure, brought suit and obtained the injunction, an injunction that restrains the employer from paying to the Union not only their own dues, but the dues of any members, regardless of their wishes.
There are 4,000 or so members of the Local who have authorized the employer to check-off their dues. The amended complaint alleges that they constitute a class and that the plaintiffs, who are seven in number, are "sufficient to fairly insure the adequate representation of all members of the class," and they sue not only for themselves but "on behalf of all those other employees * * * who have signed the aforementioned check-off authorizations and who are similarly situated."
The device of the class action, the prosecution or the defense on behalf of many by a few, is of great social utility and has earned a constantly widening application since it was first employed in equity. But inasmuch as the rights of the many who are not actually before the court may be affected by the judgment, the court must be vigilant to assure that no wrong be done them. Behrman v. Egan, 9 N.J. Super. 171 (App. Div. 1950). The procedure and the safeguards must be adapted to the circumstances of the particular case, for the class action has many variations and may be maintained in most diverse situations. In the suit before us, the rights of the employees are several and not joint; each is concerned with his own dues and has separately empowered the employer as his agent to pay his dues. They do not appear to constitute a single class for the purpose of the present controversy, but at least two classes, namely, those who want the check-off discontinued and those who do not want it discontinued. Hansberry v. Lee, 311 U.S. 32; 61 S.Ct. 115 (1940). Obviously the plaintiffs do not represent the latter group, and yet the plaintiffs pretend to speak for them and have obtained an *209 injunction interfering with the relation between the members of that group and the Union. The injunction violates the fundamental principle that no injunction shall be granted that directly affects the rights of persons who are not parties and who are not represented in the suit. Mallow v. Hinde, 12 Wheat. 193; 6 L.Ed. 599 (1827).
The plaintiffs retort that a "class" consists of those who have identical rights, and includes both those who do and those who do not desire to enforce their rights; that all the check-off authorizations have become invalid, and that what this group or that group of employees want done is immaterial to the question whether they all constitute one class. We believe this view of the matter is unsound. Where the circumstances are such that all the persons severally possessing the right which is the basis of the suit would naturally want the right enforced  for instance, where the right has great value  such persons may be considered a single class, although actually there are dissenters among them. But where the wish of many to enforce the right is doubtful, the possessors of the right do not constitute a class. That was the situation in Hansberry v. Lee, supra, and is the situation here. But let us follow through on plaintiffs' theory. Since the check-off of each employee's dues depends on the separate authorization which he signed, the rights of the employees are several and not joint; and the action before us is of the kind that has come to be known as a spurious class suit. 3 Moore's Fed. Prac. 3442 (Ed. 1948). Professor Moore strikingly characterizes such a suit as "an invitation to become a fellow traveller in the litigation, which may or may not be accepted. It is an invitation and not a command performance." The employees who accept the invitation, by taking whatever may be the appropriate steps, become parties to the action and are concluded by the judgment; while the employees who entirely fail to accept, are not concluded. Wabash Railroad Co. v. Adelbert College, 208 U.S. 38, 28 S.Ct. 182 (1908); California Apparel Creators v. Wieder, 162 F.2d 893 (1947); Newberry Library v. Board of Education, *210 55 N.E.2d 147 (Ill. 1944); Moore Fed. Prac. 3465. Until they come in, they are not parties, actual or constructive, and no injunction should be made directly touching them.
Again, it may be observed that the plaintiffs, and those employees whom we may assume that the plaintiffs represent, are in no way interested in the means by which other employees pay their dues to the Local. The former are not injured or prejudiced by the circumstance that the latter use the check-off system of payment instead of making payment directly to the financial secretary of the Local. It is elementary that an injunction will not be granted unless the threatened acts would injure the plaintiff and that an interlocutory injunction should be no more extensive than is requisite for the protection of the plaintiff. Master Weavers Assn. v. Associated, etc., Silk Workers, 116 N.J. Eq. 502 (Ch. 1934); Sonotone Corp. v. Ellis, 4 N.J. Super. 331 (App. Div. 1949).
Were the only objections to the injunction those already mentioned, they might be satisfied by narrowing the restraint so that the employer would be enjoined from paying to the Local only the dues of the plaintiffs and such other employees as might signify their desire to join forces with the plaintiffs. But there are other considerations that require the injunction to be set aside altogether.
The check-off is only a method for the payment of dues. It is of substantial importance to the Local, since it results in the prompt payment of all the members' dues in one lump sum monthly, instead of 4,000 separate payments spread over several weeks. And it is a convenience for the member, since it saves him trouble, and it seems not at all a detriment to him so long as he wants to remain a member of the Local. The plaintiffs do not show that the check-off of their own dues works a substantial or irreparable injury, and therefore they do not show a ground for any interlocutory injunction. McMillan v. Kuehnle, 78 N.J. Eq. 252 (E. & A. 1910).
The plaintiffs' grievance appears to be this: The defendant Local is a unit of a so-called International Union that was *211 affiliated with the Congress of Industrial Organizations  the C.I.O. Then, last November, the C.I.O. expelled the International Union. The plaintiffs say the connection with the C.I.O. was a vital factor in winning their allegiance to the Local. Assuming that to be so, we could understand that, because of the expulsion of the International, they would no longer consider membership in the Local desirable and would wish to resign. Furthermore, the plaintiffs and other employees who agree with them can resign at will from the Local without jeopardizing their jobs, since the contract between the employer and the Local, as bargaining agent, contains no maintenance of membership clause or similar provision. Immediately on resignation the check-off of their dues would stop. They, therefore, need no injunction for their protection. We have read the plaintiffs' statement that the affiliation with the C.I.O. was a condition essential to the continuing validity of the check-off authorizations. If the check-off be taken as a symbol of membership in the Local, we can accept the statement and reiterate that they are free to resign. But if they mean that disaffiliation with the C.I.O. is a rational ground for substituting direct payment of their dues to the financial secretary, instead of payment via the check-off, or if they mean, as they seem to, that disaffiliation gives them a right to remain members of the Local without paying dues at all, we disagree.
The order for the injunction is reversed with costs.