[Civ. No. 15483. First Dist., Div. One. May 25, 1953.]

THE MOST WORSHIPFUL SONS OF LIGHT GRAND LODGE, ANCIENT FREE AND ACCEPTED MASONS, JURISDICTION OF CALIFORNIA (a Nonprofit Corporation) et al., Plaintiffs and Appellants, v. SONS OF LIGHT LODGE NO. 9 et al., Respondents; J. S. POUGH, Cross-Defendant and Appellant.

Marvin E. Lewis for Appellants.

Sol A. Abrams and Anthony E. O'Brien for Respondents.

BRAY, J.—Appeal by cross-defendants from a judgment against them for $11,517.73 and interest, and denying relief on their complaint to those cross-defendants who were plaintiffs, and from denial of a motion to set aside final judgment. They purport to appeal from the interlocutory judgment[1]

[1] An appeal by cross-defendants heretofore attempted from said interlocutory judgment was dismissed as premature. (*Most Worshipful etc. Lodge* v. *Sons etc. Lodge*, 91 Cal.App.2d 582 [205 P.2d 722].)

and report of the referee. As these are reviewable on the appeal from the final judgment, the appeal as to the latter two matters will be dismissed.

## QUESTIONS PRESENTED

1. Where majority members of an unincorporated fraternal association withdraw because of false representations which induced them to join, may such members take with them its assets?

2. May they take its name?

3. Does a new lodge formed by such members have any right to compel the old lodge to pay it a sum equal to the fees, dues, etc., formerly paid by such members to the old lodge?

4. Does such lodge have the right to recover such moneys from the grand lodge to which the old lodge belongs?

## BACKGROUND

As this case seems to be confusion worse confounded, its background as revealed by the evidence will be presented first in order better to understand the pleadings, findings and true issues. In 1910 The Most Worshipful Hiram of Tyre Grand Lodge of Ancient Free and Accepted Masons (colored) of the State of California, a corporation,[2] was incorporated as a nonprofit fraternal organization. It continued to operate as such and at the time of trial had 20 subordinate lodges. At one time it sent its grand master to a national congress of grand masters (colored) and for a while was recognized by that congress as the only grand lodge in California recognized by it. In 1941 there was a split-up within the congress and several factions formed their own congress. In 1942 the first mentioned congress withdrew its recognition from Tyre, although a different congress continued to recognize it. In 1943 three colored Masonic subordinate lodges not affiliated with Tyre were organized. Of these cross-defendant Pough in April organized Sons of Light No. 444, which in turn organized Orange Grove Lodge No. 138 and Rising Star Lodge No. 412. In May, Pough organized plaintiff, The Most Worshipful Sons of Light Grand Lodge, Ancient Free and Accepted Masons, Jurisdiction of California, a nonprofit corporation.[3] Later, Oriental Lodge No. 13, and Pride of Rich-

---

[2]This is the grand lodge (hereafter referred to as Tyre) which was the plaintiff in *Most Worshipful etc. Lodge* v. *Sons etc. Lodge*, 94 Cal. App.2d 25 [210 P.2d 34], the case which was consolidated and tried with the case at bar.

[3]Hereafter referred to as Light Grand Lodge.

mond Lodge No. 74 were organized under Light Grand Lodge. Pough became grand master of Light Grand Lodge and still is. In 1946 one Wilson was deputy grand master. In August while Pough was east attending a meeting of grand masters, Wilson called a meeting of Sons of Light No. 444, which then had a membership of about 260, at which "the largest portion," "practically all" the members decided to withdraw from Light Grand Lodge and join Tyre. This they did, using the same name but a different number, Sons of Light Lodge No. 9. Shortly thereafter a vote was taken in Oriental Lodge No. 13. Twenty-seven members voted to go over to Tyre and six who were not present did not vote. The 27 members then joined Tyre under the same name and number, Oriental Lodge No. 13. One hundred fifty out of 162 members of Pride of Richmond Lodge No. 74 went over to Tyre, using the same name but changing the number, and became Pride of Richmond Lodge No. 14. Eighty-six out of 89 members present of Orange Grove Lodge No. 138 voted to go over to Tyre. They kept the same name but changed the number and became Orange Grove Lodge No. 20. All of the groups which transferred their allegiance to Tyre, took with them all of the respective lodges' funds, bank accounts, robes, paraphernalia, records, assets and personal property, and including the real property of Pride of Richmond Lodge No. 74.[4] While under the jurisdiction of Light Grand Lodge, all members of the subordinate lodges were required to pay certain dues and fees to it. Apparently Grand Master Pough was entitled to retain considerable of these funds. This brings us to the——

### PLEADINGS, FINDINGS AND JUDGMENT

The plaintiffs are Light Grand Lodge, each of the subordinate lodges from which members purported to take their respective lodges over to Tyre, and a remaining member of each of those lodges suing individually and in a representative capacity for the other remaining members of the respective lodges. The complaint alleged the ownership of the property taken from the respective lodges, the acts of defendants in removing the assets from plaintiff subordinate lodges and asked damages for their conversion and that defendants be restrained from using the names of said subordinate lodges and for damages. While some question could be raised as

[4] For brevity, all this will be referred to as "assets."

to the right of plaintiff subordinate lodges to bring this action in their own names (apparently only actions brought under section 3369 of the Civil Code can be brought by a fraternal unincorporated association in its own name; see *Athens Lodge No. 70* v. *Wilson*, 117 Cal.App.2d 322 [255 P.2d 482], it is unnecessary to consider this question for the reason that plaintiff individuals are bringing the action in a representative capacity and the assets sued for as well as the lodge names are alleged to be the property of the respective lodges which the respective individuals represent. Differing with the situation of the cross-complaints which will hereafter be set forth, the rights sought to be enforced by plaintiffs are not the rights of individual members but of the respective subordinate lodges as units.

The defendants are the lodges formed by the members who withdrew from plaintiff subordinate lodges and two members of each lodge individually and as members of the respective lodges. Defendants filed an answer alleging that plaintiff subordinate lodges, the individual plaintiffs and cross-defendant Pough were agents of plaintiff Light Grand Lodge; that plaintiffs represented to the members of defendant lodges that Light Grand Lodge was the sole and exclusive colored Masonic Grand Lodge in California, which representations were untrue; that because of such representations defendants and members of defendant lodges joined and became members of Light Grand Lodge and paid dues and other sums in large amounts to plaintiffs; that defendants, upon learning of the falsity of said representations, severed all connection with plaintiffs and affiliated with Tyre, retaining the assets of their respective lodges theretofore operated under affiliation with Light Grand Lodge; that said assets belong to defendants. In a cross-complaint defendants alleged that the individual cross-complainants were members of their respective cross-complainant subordinate lodge and were appearing for all the members of such lodge because the matters alleged affected all members of such lodges; that defendants and the members of the defendant lodges had been damaged in the sum of $100,000. Defendants then prayed that plaintiffs be compelled to account for all initiation fees, dues and other moneys paid by defendants to plaintiffs and in addition for $100,000 damages.

The court found that plaintiff Light Grand Lodge is not in fact a nonprofit corporation nor organized for the purpose of promoting Masonic principles among its members and sub-

ordinate lodges; that plaintiff subordinate lodges and members were its agents and that said subordinate lodges are not independent unincorporated voluntary associations[5]; that defendant lodges are colored Masonic lodges and that the defendant members of each lodge represent all the members of the respective lodge and that all members of each lodge are affected by all the matters found herein and that they are of common and general interest to all members; that although Tyre had been established in 1910 and was functioning as a colored Masonic Grand Lodge of which plaintiffs well knew, plaintiffs and cross-defendant Pough, for the purpose of depriving defendants of their money and property, fraudulently represented to the individual defendants and the members of defendant lodges that plaintiff Grand Lodge and subordinate lodges were the sole and exclusive bona fide colored Masonic lodges in California; that relying upon such representations the individual defendants and the members of the defendant lodges joined plaintiff Light Grand Lodge and subordinate lodges and paid to plaintiffs large sums of money as initiation fees, monthly dues, relief taxes, Grand Lodge taxes, Saint John's day taxes and other assessments to their damage; that about August 4, 1946, upon learning of the falsity of said representations the individual defendants and the members of defendant lodges severed all connection with plaintiffs and affiliated with defendant lodges and with Tyre; that upon such affiliation defendants retained the assets of their respective organizations theretofore operated under plaintiff Light Grand Lodge and that said defendants are now the owners of all of said assets and that none of plaintiffs contributed any money or other thing to make up such assets; that the names "Sons of Light," "Oriental," "Pride of Richmond" and "Orange Grove" are not the property of any of the parties and that plaintiffs have no exclusive or prior right to their use; that sufficient evidence was not produced to show the actual extent of damage to defendants by reason of said false representations and hence the court cannot determine its extent. An interlocutory judgment was then entered providing that plaintiffs recover nothing on their complaint; that plaintiffs be required to account for all moneys received as aforesaid, and that upon such accounting defendants shall be given judgment for the amount thereof together

---

[5]The evidence demonstrates that they are unincorporated voluntary associations. Probably this finding was intended to mean that they were not independent of the control of Light Grand Lodge.

with interest. A referee was appointed and the accounting had. The referee's report showed that from October 25, 1943, to August 4, 1946, the total amount received by plaintiffs from defendants and the members of defendant lodges for initiation fees, dues, taxes and assessments was $11,517.73.[6] Thereupon final judgment was entered determining that plaintiffs take nothing under their complaint; that defendants have judgment against plaintiffs for said sum and $2,999.63 interest. Plaintiffs then moved to set aside the final judgment on two grounds: that no opportunity was given them (1) to except to the findings of the referee, and (2) to argue that an appellate court decision was res judicata. They also moved for a new trial. Both motions were denied.

### 1. Do Defendants Have Any Right to the Former Assets of Plaintiff Lodges?

 Assuming that the evidence supports the court's findings that defendants' members joined plaintiff subordinate lodges because of false representations and withdrew because they learned of their falsity, are defendants entitled to keep the assets of the lodges from which they withdrew and to take their names? The answer is, they are not. The assets of a fraternal association are the property of *all* the members, not of any number less than all of them. They can only be transferred to another lodge by consent of *all* the members. One objector alone can stop such transfer.

#### ASSETS BELONG TO LAST MEMBER

 It is well settled that "Dues and assessments paid by members to an association become the property of the association and any severable or individual interest therein ceases upon such payment. [Citations.]" (*DeMille* v. *American Fed. of Radio Artists,* 31 Cal.2d 139, 149 [187 P.2d 769, 175 A.L.R. 382].) "The member and the association are distinct. The union represents the common or group interests of its members as distinguished from their personal or private interest." (P. 149.) The same is true of a lodge. In *Lawson* v. *Hewell,* 118 Cal. 613 [50 P. 763, 49 L.R.A. 400], it was stated that a member has no severable proprietary right to any portion of the property accumulated by reason of the payment by himself and others of dues, and that his

---

[6]While the referee characterized this amount as moneys paid by the members of defendant lodges to plaintiffs, actually it represents only the moneys paid by plaintiff subordinate lodges to plaintiff Light Grand Lodge and cross-defendant Pough prior to defendants' withdrawal.

interest in such property is merely incidental to his member-ship and ceases upon his ceasing to be a member.

"When a schism has occurred in a religious or benevolent association, which has united with and assented to the control and supervision of a general organization, and acquired property since its union and assent to the government of the general organization, by the investment of dues collected from its members while harmony obtained, the title to the property remains in the name of the association, and that faction which has remained loyal and adhered to the laws, usages, and customs of the general organization consti-tutes the true association, and is alone entitled to the use and enjoyment of the association's property. This rule applies whether the subordinate association be a corporation or simply a voluntary association, and regardless of whether the majority or minority of the entire membership constitute the faction adhering to and observing the laws, usages, and customs of the general organization, provided the minority includes the minimum number necessary to support the local organization." (*Union Benev. Soc. No. 8* v. *Martin,* 113 Ky. 25 [67 S.W. 38, 39].)

In *Henry* v. *Cox,* 25 Ohio App. 487 [159 N.E. 101], all but 18 of 3,500 members of a subordinate branch of the Ku Klux Klan voted to return its charter to the parent organization. By vote of all but five members all assets of the branch were attempted to be transferred to a new organization. The court held that while the members had the right voluntarily to withdraw individually or collectively, they could not take with them nor transfer any of the property of the subordinate branch. In *Sabourin* v. *Lippe,* 195 Mass. 470 [81 N.E. 282], a majority of the members of a local court of Foresters of America seceded, and formed a new court under the same name as the old. The new court was recognized by the grand court of the order as the old court. The court held that the original subordinate court continued in existence. "We un-derstand it to be the law that any attempted secession by a subordinate body or order, unless through the unanimous action of all its members is illegal and uneffective as to loyal members and the secessionists lose all right in the property of the subordinate lodge. [Citations.]" (*Di Silvestro* v. *Sons of Italy Grand Lodge,* 129 Misc. 521 [222 N.Y.S. 203, 215].) Almost the identical situation to that in our case occurred in *Phillips* v. *Widow's Son Lodge No. 54, A. F. &*

*A. M.,* 152 Va. 526 [147 S.E. 193], where by a vote of 34 to 3 the majority members of Widow's Son Lodge No. 54 withdrew from that lodge and organized Widow's Son Lodge No. 14, and severed their allegiance to the grand lodge. They took with them and transferred to the new lodge all of the funds of the old lodge. In holding that those funds could not be legally so taken the court said (p. 194) : ". . . their action in undertaking to transfer all of the funds of Lodge No. 54 to themselves and to Widow's Son Lodge No. 14 was without warrant of law and shocks the conscience."

In *Stringfellow* v. *Loyal Tabernacle No. 48,* (Tex.Civ.App.) 291 S.W. 1115, the dissentient group joined a new lodge and took with it the funds of the old lodge. The court held that having withdrawn from the old lodge they thereby lost their right to hold, manage or control those funds. In *In re St. Vincent de Paul Benev. Assn. of New Orleans,* (La.App.) 175 So. 140, it was held that the property of an unincorporated association still belongs to the association, even though there is only one member left.

Defendants contend that these rules do not apply where the dissentient members were induced to join the old lodge by fraud. They contend that because of fraud in connection with the obtaining of members to the old lodge, the new lodge or defendant individuals on behalf of all other dissentients are entitled (1) to all the assets of the old lodge, (2) to all dues, fees, etc., paid to the old lodge and (3) damages against the old lodge. However, they cite no cases supporting the proposition that the fraud entitles them to take from the lodge its property. Defendants rely upon cases like *Grand Grove etc. of Druids* v. *Garibaldi Grove No. 71,* 130 Cal. 116 [62 P. 486, 80 Am.St.Rep. 80], *Scott* v. *Donahue,* 93 Cal.App. 126 [269 P. 455], and *Supreme Lodge of the World* v. *Los Angeles Lodge No. 386,* 177 Cal. 132 [169 P. 1040], to the effect that an improper dissolution of the subordinate lodge by the grand lodge does not entitle the grand lodge to the subordinate lodge's assets, on the theory that the constitution and bylaws of the grand lodge provide the terms of the contract between it and the subordinate lodge and the grand lodge can only be entitled to the property of the subordinate lodge pursuant to the terms of that contract. Such a question is not involved here. Although Light Grand Lodge is joined as a plaintiff the question is not between ownership by that grand lodge and its subordinate lodges, but between ownership by those subordinate lodges and lodges formed by the former

members who withdrew therefrom. The Light Grand Lodge constitution and bylaws apparently provide that in the event that a lodge becomes defunct, suspended or withdrawn from the grand lodge, only the lodge's books of record and account and the ritual and seal become the property of the grand lodge. Here, however, it is not a case of the lodge becoming defunct, suspended or withdrawn, but one where some members withdraw and form a new lodge.

Interesting enough, since it is cited by defendants, *Supreme Lodge of the World* v. *Los Angeles Lodge No. 386, supra,* 177 Cal. 132, recognizes the rule we are applying here. There 700 members of Los Angeles Lodge No. 386, a subordinate lodge of the Moose (apparently an unincorporated association), withdrew and incorporated under the same name and number. The Supreme Dictator of the Moose revoked the charter of the old lodge, transferred it to the new lodge, and ordered its assets transferred to the new lodge. The court held the action of the dictator in revoking the old lodge charter was not authorized by the rules of the order, and ordered the new lodge to return the assets to the old lodge. The new lodge contended that because it supported the acts of the dictator and the old lodge refused to do so, thereby the old lodge became seceders and came within the rule "that where a majority, however large, secede and renounce their allegiance to the supreme body, the minority, however small, who remain steadfast to the purposes of the order, are entitled to the lodge property. [Citations.]'' (P. 138.) The court held that the new lodge group were the seceders, and applied the rule against them.

The doctrine of "clean hands" is not applicable here for the reason that the evidence fails to disclose any fraud of the plaintiff subordinate lodges. The old lodges are entitled to have their assets returned. Although the Light Grand Lodge is a plaintiff, it is not entitled to any of these assets as there has not been a dissolution of any of the subordinate lodges.

The trial court made a finding to the effect that none of the loyal members of plaintiff subordinate lodges contributed anything towards the assets which the dissentient members took away with them. There is no evidence to support this finding.

Defendants contend that because of the fraud found by the court they are entitled by way of "defensive relief" to keep defendant subordinate lodges' assets, citing *Nevada Land & Inv. Corp.* v. *Sistrunk,* 220 Cal. 174 [30 P.2d 389], and *U. S. Mach. Co.* v. *International Metals Dev., Inc.,* 74 Cal.App.

2d 5 [168 P.2d 37] "This remedy has been styled 'defensive relief,' whereby the fraud is set up by way of defense to defeat an action brought to enforce an apparent obligation or liability." (220 Cal. at p. 177.) That rule does not apply to the situation here, where plaintiff subordinate lodges are seeking to recover their own assets. Moreover, defendant subordinate lodges, as herein pointed out, are not the parties who were injured by the fraud, nor were plaintiff subordinate lodges the ones making the misrepresentations.

2. *Names.*

██ On just what theory defendants claim the right to use the identical name and number of one of plaintiff subordinate lodges and the name of the other plaintiff subordinate lodges does not appear. The lodge name is an asset of the particular lodge and like other assets belongs to the old and not the new lodge. Nor is any defendant lodge entitled to use any name so similar to that of any plaintiff lodge as to be likely to confuse the public. In *Brown* v. *Hook,* 79 Cal. App.2d 781 [180 P.2d 982], we had a situation in many respects similar to that here. There we held that a seceding union could not use the name "San Francisco Lodge No. 68, I.A.M." because of its similarity to the union from which it withdrew, "Machinists Union No. 68." Its use would be confusing and misleading. Obviously there would be great confusion in names between plaintiff Pride of Richmond Lodge No. 74 and defendant Pride of Richmond Lodge No. 14, between plaintiff Sons of Light Lodge No. 444, and defendant Sons of Light Lodge No. 9, etc. (See *Brown* v. *Hook, supra,* for a discussion of many cases on this subject.) Plaintiff subordinate lodges are entitled to an order restraining defendant lodges from using names similar to theirs.

3. *Moneys Paid by Plaintiff Subordinate Lodges to Light Grand Lodge and Defendant Pough.*

██ Upon what theory defendant subordinate lodges can recover dues paid to plaintiff subordinate lodges prior to the existence of said defendant lodges does not appear. It is obvious that these new lodges have no cause of action against the old lodges for moneys which the individuals now making up the new lodges paid into the old. Moreover, no theory is advanced why, in any event, plaintiff subordinate lodges who paid said sums to Light Grand Lodge as they were required to do by the rules of the grand lodge to which they had subscribed, should now be liable for those sums. Assuming

that the individual named defendants joined plaintiff lodges because of the misrepresentations and assuming that thereby they would be entitled to a return of the dues and other moneys paid plaintiffs,[7] the judgment here will have to be reversed for the reason that neither in the evidence nor in the judgment appear the amounts which said individual defendants paid. The report of the referee and the judgment lump together all sums paid, not only by the dissentient members but by those who remained loyal.

This is not a representative suit in the sense that the individual defendants are authorized to sue for the moneys due the other individuals who withdrew from plaintiff lodges. It is representative only in the sense that the individual defendants are appearing for the unincorporated associations, the lodges. The claims that the former lodge members have to a return of their moneys, if any they have, or to damages because of the misrepresentations of Pough and Light Grand Lodge, would be individual claims, requiring proof that each individual joined his respective lodge solely because of such representations and left solely because of such falsity, and the amount of moneys paid in by each such member. There might even be an offset in favor of the lodge for the benefit, if any, such member might have received while in the lodge. While such a claim could be assigned for suit purposes, it could not be recovered in a representative action. (See *Noroian* v. *Bennett*, 179 Cal. 806 [179 P. 158]; 114 A.L.R. 1015.)

A rather interesting sidelight in this case is that the trial court awarded defendant subordinate lodges, which include members who never belonged to any of the plaintiff lodges, judgment against the present plaintiff lodges, which include members who came into defendant lodges after the dissentient members had left. Moreover, with the exception of two or three members, the false representations upon which defendants rely were not made by any of the present members of plaintiff lodges. To top it all, the court held that defendants were entitled to retain all the assets of plaintiff lodges and in addition to compel plaintiff subordinate lodges to repay to defendants the moneys which the plaintiff subordinate

---

[7]See *Jackson* v. *Deauville Holding Co.*, 219 Cal. 498 [27 P.2d 643], holding in effect that the measure of damages where a person has been induced to join a club by false representations is the difference in value of such membership between what it would have been were the representations true and its present value.

lodges had paid to Light Grand Lodge as dues, etc., for the now members of defendant lodges under the rules to which such members had subscribed.

In their answer to the cross-complaint plaintiffs admitted that the individual cross-complainants appeared for and on behalf of all the members of the respective subordinate lodge each individual alleged he represented, but denied all the other allegations of the cross-complaint. Thus, they denied that each and all members of the respective lodges were affected by the matters alleged or that they were of common and general interest to all the members. Therefore there was no admission that a claim for return of dues to an individual former member of a plaintiff lodge for alleged misrepresentation to such individual was a matter of interest to a new lodge which such person may have joined. Actually, this type of claim was one which, to enable a party other than the individual himself to sue on, would have to be assigned by that individual to such party. Membership in a new lodge would not constitute such assignment.

 *Jackson* v. *Deauville Holding Co., supra,* 219 Cal. 498, cited by defendants, is not in point. There 51 individuals who had been induced to join a beach club *assigned their claims* for damages to an individual plaintiff. No such assignment was made in this case. Moreover, in the Jackson case, the court established as the measure of damages the difference between the actual value of the memberships and the value they would have had if the representations had been true. *Myers* v. *Lowery,* 46 Cal.App. 682 [189 P. 793], likewise was an action on *assigned* claims for *damages* for misrepresentation as to the nurses' training school operated by defendants.

The situation here is similar to that in *Noroian* v. *Bennett, supra,* 179 Cal. 806. There through misrepresentations a corporation obtained individual promissory notes from 20 farmers. After maturity the corporation assigned the notes to defendants who commenced separate actions thereon against 11 of the plaintiffs in that action. Thereupon all the 20 makers of the notes brought this action setting up the fraud, asking the court to take jurisdiction of the cause and restrain defendants from proceeding in the separate actions already brought and from beginning other actions on the notes. The court held that the complaint did not state a cause of action in favor of all of the plaintiffs but that at most it merely stated 20 separate and distinct causes of action, each in favor of a different plaintiff, and presented no ground for joining

them all in one action. It pointed out that the representations were made separately to each of the plaintiffs. Therefore, the proof of each representation must of necessity be distinct, independent and not determinative of any other. To constitute the fraud, each party must have relied on the promise made to him and must have been induced thereby to enter into the contract. Such reliance and inducement would be the subject of independent proof and contradiction as to each plaintiff. The trial of the joint action would require 20 different trials respecting 20 different conditions, to determine the facts upon which the rights of 20 different persons would depend, and neither trial would be a determination of the rights of any of the others. In our case, instead of 20 different actions there would be many times 20. No one member could testify as to what statements were made out of his presence, to induce other members to join, nor whether the other members joined because of such statements.

"Class or representative suits to obtain the rescission of transactions based on similar frauds practiced by one defendant upon various, and commonly numerous, persons, have so often been held not maintainable that one may well doubt whether under any circumstances such a suit will lie. One of the basic difficulties is not merely that the various transactions are legally distinct, but that each case is, or at least may prove to be, to some extent different. Even where the false representations were exactly the same, the various persons victimized may have acted upon different opinions and beliefs as to the facts; one may have relied upon one supposed fact, another upon a different one, and some may have largely acted upon their own judgment as to business possibilities, etc. Furthermore, each has an election of remedies, all may not desire the same relief, and some may not be entitled to any relief." (114 A.L.R., p. 1016.) See *Weaver* v. *Pasadena Tournament of Roses Assn.*, 32 Cal.2d 833 [198 P.2d 514], for a compilation of cases upon the subject of representative or class suits. There, it was held that a representative suit could not be brought on behalf of individuals who were denied tickets to the Rose Bowl.

The judgment in this case runs against each plaintiff subordinate lodge for not only dues, initiation fees and other moneys which it paid to Light Grand Lodge and cross-defendant Pough but also for all moneys paid to the latter two by all the other plaintiff subordinate lodges. There can be no legal ground upon which, for example, plaintiff Orange

Grove Lodge No. 138 is liable for dues and moneys paid by former members of plaintiff Oriental Lodge No. 13 to the latter lodge. Moreover, as hereinbefore stated, the referee made no attempt to segregate dues and other moneys paid by the dissentient members from those paid by the loyal members.

## FRAUD

The fraud alleged in the complaint and found by the court was that between October 25, 1943, the date of the organization of plaintiff Sons of Light Grand Lodge, and August 4, 1946, cross-defendant Pough and plaintiffs fraudulently represented to defendants and the members of defendant lodges (actually defendant lodges were not then in existence) that plaintiff Grand Lodge was the only bona fide, sole and exclusive grand lodge and its subordinate lodges the only subordinate lodges, of Ancient Free and Accepted Masons, limited to members of the colored race in California. These statements were untrue in that there was at least one other colored Masonic Grand Lodge and subordinate lodges in California, the Tyre group, which had been in existence in California since 1910. (See *Most Worshipful etc. Lodge* v. *Sons etc. Lodge, supra,* 94 Cal.App.2d 25, for holding that all colored Masonic lodges in California are clandestine and that regardless of age, none has the right to represent itself as the only bona fide lodge of Freemasonry in California.) The evidence shows that the representation that the Light Grand Lodge was the only authorized and the oldest colored Masonic lodge in California was made by cross-defendant Pough and others representing Light Grand Lodge. There is no evidence that these representations were made by the subordinate lodges themselves nor by any of the individual plaintiffs. In *Most Worshipful etc. Lodge* v. *Sons etc. Lodge, supra,* 94 Cal.App.2d 25, we stated that there was substantial evidence to support the trial court's finding that Light Grand Lodge had "misrepresented to members and prospective members that it was the only colored Masonic group entitled to function in California and led them to believe it was the older organization" and that "There was testimony at the trial that persons had joined Light thinking it was the older organization" (p. 33) because of those representations. That case was between the two grand lodge corporations, and such statement was not a statement that the subordinate lodges had made such misrepresentations. The fact that Light Grand

Lodge and its representatives made such misrepresentations, while it would support an injunction restraining them from continuing to make them, is not sufficient to authorize a recovery by any individual member without a showing that such misrepresentations were made to him, believed by him and that he joined a subordinate lodge because of them. While cross-defendant Pough, besides being Grand Master of Light Grand Lodge, was Master of Sons of Light Lodge No. 444, and perhaps because he proselyted members for all the subordinate lodges, could be held to be their agent and they to be bound by his representations (in spite of the fact that such subordinate lodges were also victims of those representations), still those facts would not obviate the necessity for the showing above mentioned. No effort was made in the trial court to determine when the individual dissentient members discovered the falsity of the representations and whether after discovering them they or any of them continued to remain members of their respective lodge for any considerable time before withdrawing.

From the evidence it appears that Light Grand Lodge may have been conducted for the benefit of Pough. Apparently most of the fees, dues and other moneys paid to it by the subordinate lodges went to Pough. Many sums were paid by those lodges directly to him. Several of the witnesses who testified for defendants gave as their reasons for withdrawing, not the representations about exclusive Masonic lodges, but because they were dissatisfied with the way their lodge was being run, or that too much money was going to the grand lodge and Pough or that Pough did not send the supplies he had promised.

Plaintiffs contend that our decision in the companion case (94 Cal.App.2d 25) contradicts the findings here. The judge who made the findings upon which the interlocutory judgment was based was under the belief as he expressly stated many times during the trial and as he found in the companion case, that Tyre and its subordinate lodges were the only colored Masonic lodges entitled to practice Freemasonry in California. However, in his findings here he did not so state but found only that Sons of Light were not the only colored Masonic lodges entitled to practice Freemasonry in California and thus the holding in the companion case that Tyre, too, is not the only Masonic group entitled to practice in California does not affect the findings here.

#### 4. *Judgment Against Light Grand Lodge and Pough.*

Nor can defendant subordinate lodges recover from Light Grand Lodge in this action the moneys paid it by the subordinate lodges. While the evidence supports the finding that Light Grand Lodge and Pough made the misrepresentations charged, there is no legal theory upon which defendant subordinate lodges which were not even in existence have any cause of action against either. As hereinbefore pointed out, the causes of action arising from such fraud are individual in each member so defrauded. He alone can bring an action for such fraud.

The appeals from the interlocutory judgment and the report of the referee are dismissed, and the judgment and the order appealed from are reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 22, 1953.