[Civ. No. 23238. Second Dist., Div. Three. Feb. 2, 1959.]

LEONARD PRICE et al., Appellants, v. COMMUNICATIONS WORKERS OF AMERICA LOCAL 9503 etc., Respondent.

Pregerson & Costley for Appellants.

Levy, Russell, De Roy & Geffner and Léo Geffner for Respondent.

VALLÉE, J.—Appeal by plaintiffs from a judgment of dismissal in a suit claimed to be representative. The named plaintiffs are four in number. Defendant's demurrer to the first amended complaint, called the complaint, was sustained with leave to amend. Plaintiffs did not amend and judgment of dismissal was entered. The question is: Is this a proper representative or class suit?

The complaint alleges:

## Count I

1. Defendant is a union with its principal place of business in the county of Los Angeles. It is the recognized bargaining agent by Pacific Telephone and Telegraph Company, called the company, and represents all those employees of the company who are members of the union.

2. Prior to about January 15, 1956, plaintiffs were employees of the company and were members in good standing of the union. Under an agreement between the union and the company, plaintiffs had authorized the company to deduct their monthly union dues from their regular pay checks and to pay them to the union.

3. About January 15, 1956, defendant levied an assessment on all members, which plaintiffs refused to pay. About that date, in accordance with the constitution and bylaws of the union, plaintiffs were expelled from the union. Since that date plaintiffs have not been members of or affiliated with the union.

4. After they were expelled, plaintiffs continued to allow the company to deduct their regular monthly dues from their pay checks and to pay them to defendant as plaintiffs hoped to be reinstated by the union as members in good standing. Since plaintiffs were expelled defendant has continued to collect the dues for each plaintiff from the company over varying periods of time. On information and belief, substantially all of the about 300 former members of the union who are the rightful owners of the funds held by defendant have terminated the authorization to the company either by a revocation or by the termination of their employment with the company. On information and belief, defendant has kept the funds received from the company separate and distinct from their regular funds and the funds are on deposit in a special account.

5. Plaintiffs, individually and as representatives of the above-described class, have demanded the return of the funds

from defendant. Defendant has refused to return them and continues to withhold them in the approximate amount of $6,000.

6. Plaintiffs, and each of them, constitute a class so large that it is impracticable to bring them all before the court. Plaintiffs, and each of them, are members of a definite, ascertainable class which can be determined "by" the books and records of defendant, which records will show the exact moneys held by defendant which rightfully belong to the respective plaintiffs, and each of them. All of the moneys of the respective plaintiffs, and each of them, are held in a common fund which is on deposit with defendant Doe II, standing in the name of the union.

7. Plaintiffs, individually and as representatives of the above described class, have retained the office of Pregerson and Costley, attorneys, to represent them on a contingent fee arrangement specifying that the attorneys are to advance all costs of suit; from any recovery the costs advanced shall first be deducted, and the attorneys shall receive 25 per cent of all moneys recovered by settlement or $33\frac{1}{3}$ per cent of all moneys recovered by settlement, judgment, or otherwise after a trial date has been set; if there should be no recovery no moneys shall be owing to the attorneys for costs advanced or fees; and if there is a recovery the attorneys shall have a lien for their services and costs advanced.

## Count II

1. Realleges the allegation of count I.

2. As the former representative and bargaining agent of plaintiffs, defendant was in a confidential relationship with plaintiffs.

3. After plaintiffs were expelled from the union defendant came into possession of funds that rightfully belong to plaintiffs. Defendant holds the bare legal title to the funds; and all equitable right, title, and interest in the funds belongs to plaintiffs. Defendant holds the funds as constructive trustee under a constructive trust for the use and benefit of plaintiffs. If the funds are disposed of by defendant, plaintiffs will suffer irreparable harm.

Count III realleges the allegations of count I and a common count for money had and received, the amount alleged being about $6,000.

The prayer is for judgment against the union in the approximate amount of $6,000, the exact amount to be determined

in accordance with proof, and that a receiver be appointed to distribute the funds in the following manner: first, to reimburse the attorneys for costs advanced, attorney fees in the amount of 25 per cent of settlement or 33⅓ per cent after date of trial has been set, and: second, the balance to plaintiffs in accordance with proof.

The demurrer was general and special. The record discloses that the demurrer was sustained[1] on the ground the named plaintiffs may not prosecute the action as a representative suit on behalf of the unnamed about 300 former members of the union.

Code of Civil Procedure, section 382, in pertinent part provides:

". . . when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

A party may therefore sue for the benefit of many in one of two cases: (a) where the question is one of a common or general interest of many persons, or (b) where the parties are numerous and it is impracticable to bring them all before the court. ■ "Section 382 of the Code of Civil Procedure permits an action to be brought by one or more parties on behalf of others when the parties are numerous. This is a statutory provision based upon the common law theory of convenience to the parties when one or more fairly represent the rights of others similarly situated who could be designated in the controversy. It is known as the doctrine of virtual representation, and such representees if sufficiently represented are bound by the order or judgment made. ■ The sufficiency of the representation is generally gauged by the good faith of the representors and the effect of the order or judgment upon the unnamed parties." (*Fallon* v. *Superior Court*, 33 Cal.App.2d 48, 50 [90 P.2d 858].)

■ A representative suit is proper only to conserve a common fund or property in which all of those represented have an interest. (*Watson* v. *Santa Carmelita etc. Co.*, 58 Cal. App.2d 709, 718-719 [137 P.2d 757].) ■ If the rights of each member of the class are dependent on facts applicable to him alone there is not the requisite ascertainable class required for a representative suit. (*Barber* v. *California Emp. Stab. Com.*, 130 Cal.App.2d 7, 14 [278 P.2d 762].)

---

[1]Judge Chantry sustained the demurrer; Judge Aiso signed the judgment.

The leading case enumerating the rules as to when a representative suit may be maintained is *Weaver* v. *Pasadena Tournament of Roses Assn.*, 32 Cal.2d 833 [198 P.2d 514]. The court stated (p. 835):

"Four plaintiffs—'on behalf of themselves and all others similarly situated'—brought this action in the Superior Court of Los Angeles County, each seeking to recover the $100 statutory penalty imposed for the wrongful refusal of admission to the Rose Bowl Game at Pasadena on January 1, 1947— a 'place of public amusement or entertainment.' . . .

■ "[P. 837.] But in any event and regardless of which of the alternative conditions of the statute is invoked as authorizing a class proceeding, it has been uniformly held that there must be a well-defined 'community of interest' in the questions of law and fact involved as affecting the parties to be represented. [Citations.]

"Plaintiffs contend that 'all the individuals,' whether 'named or unnamed,' who waited in line but were denied tickets to the Rose Bowl Game 'have the same interest in the subject matter and the recovery'; that 'the facts necessary to prove the cause of action of any one of them are the same [as those] necessary to prove the cause of action of any one or all of the others'; and that the number of interested individuals, 'amounting to several hundred,' renders it 'impracticable to bring them all before the court.' Accordingly, they urge that this action comes within the provisions of either of the statutory conditions sustaining the prosecution of a representative suit, and particularly within the second category. But plaintiffs misconstrue the nature of this litigation. The causes of action of the several plaintiffs and the other unnamed aggrieved individuals are separate and distinct. The question, as to each individual plaintiff, is whether *he* 'as a person over the age of twenty-one years' presented himself and demanded admittance to the game, whether *he* tendered the price of the ticket, and whether, as to *him*, the refusal of admission was wrongful under section 53 of the Civil Code, entitling him 'to recover . . . his *actual damages*, and one hundred dollars in addition thereto.' (Civ. Code, § 54; emphasis added.) Moreover, other independent factors of consideration arise in connection with the respective individual claims by reason of the provision that a 'person under the influence of liquor, or who is guilty of boisterous conduct, or [who is] of lewd or immoral character, may be excluded from any such [public] place of amusement.' (Civ. Code,

§ 53.) Thus, a decision favorable or adverse to these plaintiffs—or any of them—could not determine the rights of any of the unnamed parties whom plaintiffs purport to represent. True, the plaintiffs, and perhaps others who waited in line and were refused tickets of admission, have an interest in a common question of law, that is, whether the statutory recovery is authorized when an operator of a 'place of public amusement or entertainment' advertises 7,500 tickets for sale to the general public and then later, after selling only 1,500, closes the box office upon announcing that 'all of the available tickets had been sold.' But the determination of such question in the present case would still leave to be litigated the right of any other person to recover on his statutory claim in the light of whether *he*, in reliance upon the advertised sale, stood in line, received an identification stub, was denied tickets before the promised 7,500 had been sold, presented himself at the Rose Bowl as a 'sober, moral person,' demanded admission, tendered the price, and was refused, entitling him 'to recover . . . his actual damages' as well as the fixed statutory penalty of $100.

■ ''In general, a representative suit is proper because it is in behalf of a common or joint interest of an *ascertained class* in the subject-matter of the controversy. . . . [P. 839.] In the present case there is no ascertainable class, such as the stockholders, bondholders, or creditors of an organization. Rather, there is only a large number of individuals, each of whom may or may not have, or care to assert, a claim against the operators of the 1947 Rose Bowl Game for the alleged wrongful refusal of admission thereto. Each of such claimants must establish separately that he was refused admission, and that such refusal was wrongful under section 53 of the Civil Code. Moreover, each claimant would have the independent right, under section 54 of said code, to litigate the question of his recovery of 'actual damages' in addition to the $100 penalty imposed by the statute. While each would be 'similarly situated' in that his cause of action arises under the same statute, his recovery would rest on a distinct premise correlative with varying proof as to the facts of his particular case. In such circumstances there is not the necessary 'common or general interest' in the subject-matter of the litigation appropriate to the maintenance of a representative action as that type of proceeding has been analyzed in the adjudicated cases. . . .

■ '' [P. 841.] So the fact that 'numerous parties' have

separate and distinct claims against the same person or persons will not alone suffice to sustain a representative suit where there is no community of interest. To hold otherwise would nullify the equitable concept of section 382 of the Code of Civil Procedure as a procedural convenience for the maintenance of representative litigation. . . .

"[P. 842.] In concluding this discussion, there is one further point to be noted. In cases properly falling within the category of representative litigation, the judgment or decree would be res judicata for or against the class sought to be represented." (Also see *Most Worshipful Lodge* v. *Sons etc. Lodge*, 118 Cal.App.2d 78 [257 P.2d 464] ; *Watson* v. *Santa Carmelita etc. Co., supra*, 58 Cal.App.2d 709, 718.)

██ The complaint alleges that the plaintiffs allowed deduction of dues after expulsion in the hope they would be reinstated in the union as members in good standing. Each expelled member of the union whose dues were paid to the union may have had a separate claim therefor, no doubt varying in amount. In disposing of his claim questions would arise as to whether he revoked his authorization to the company to deduct his dues and pay them to the union; as to whether he wished the union to collect his dues and, if not, when did he disapprove the practice and revoke his authorization; as to whether he wishes the union to collect the dues from the company in order to satisfy the assessment; as to whether he voluntarily permitted the company to pay the dues to the union in consideration of receiving union representation; as to whether he desires to apply for reinstatement in the union and wishes the collected dues to be applied to the reinstatement and the payment of back dues. Desire of reinstatement would seem to follow from the fact that an expelled member permitted deduction of dues when he could have stopped it by revocation of his authorization. The allegation of the complaint with respect to revocation of the authorization is that "substantially all of the approximately 300 former members" have revoked their authorizations to the company either expressly or by termination of employment. There is no allegation that the named plaintiffs have revoked their authorizations. The factual allegation as to why there was no revocation of the authorizations for any period of time is separate as to each expelled member. So it is with respect to when each expelled member who terminated his employment with the company did so. The questions whether an unnamed plaintiff intended that the company should deduct his dues

and pay them to the union and whether he has no desire to bring a lawsuit or assert any claim to the moneys are factual questions.

The complaint alleges the named plaintiffs have a contingent fee contract with their attorneys and the prayer is that the fees be deducted from the recovery. There is no allegation that the about 300 former members of the union agreed to this arrangement. Yet if the suit were maintained they might be bound by the contract and the judgment would be res judicata.

The unnamed plaintiffs may have rights which are independent of those of the named plaintiffs, and defendant may have rights against the unnamed plaintiffs or some of them which it does not have against the named plaintiffs. There is no community of interest regarding questions of law and fact between the named and the unnamed plaintiffs. In fact, there is no definite, ascertainable class. There is only a large number of individuals, each of whom may or may not have or care to assert a claim against the union. There could be an indefinite number of factual situations applicable to the about 300 of those claimed to be similarly situated whom the named plaintiffs seek to make parties to this action without their knowledge, consent, participation, and, so far as appears, regardless of their wishes. A decision favorable or adverse to the named plaintiffs or any of them could not determine the rights of any of the unnamed plaintiffs whom the named plaintiffs purport to represent. To permit this as a representative suit might deprive defendant of the right to assert any defenses it might have against individual, unnamed plaintiffs. A judgment that the named plaintiffs are or are not entitled to recover should not operate as res judicata against either the unnamed plaintiffs or against defendant union.

*Zaleski* v. *Local 401 of United E. R. & M. Workers,* 9 N.J. Super. 206 [75 A.2d 740], concerned the method of paying dues to a labor union local. The named plaintiffs, seven in number, and perhaps all the members severally, empowered their employer to "deduct or check-off" their dues and pay them to the local. The plaintiffs, becoming dissatisfied with this procedure, brought suit on behalf of themselves and all members of the union who had authorized the employer to check-off their dues, and obtained an injunction that restrained the employer from paying to the union not only their own dues but the dues of any members. Reversing, the court said (p. 741 [75 A.2d]) :

"The device of the class action, the prosecution or the defense on behalf of many by a few, is of great social utility and has earned a constantly widening application, since it was first employed in equity. . . . In the suit before us, the rights of the employees are several and not joint; each is concerned with his own dues and has separately empowered the employer as his agent to pay his dues. They do not appear to constitute a single class for the purpose of the present controversy, but at least two classes, namely, those who want the check-off discontinued and those who do not want it discontinued. *Hansberry* v. *Lee* (1940), 311 U.S. 32 [61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741]. Obviously the plaintiffs do not represent the latter group, and yet the plaintiffs pretend to speak for them and have obtained an injunction interfering with the relation between the members of that group and the Union. . . .

"Where the circumstances are such that all the persons severally possessing the right which is the basis of the suit would naturally want the right enforced—for instance, where the right has great value—such persons may be considered a single class, although actually there are dissenters among them. But where the wish of many to enforce the right is doubtful, the possessors of the right do not constitute a class. That was the situation in *Hansberry* v. *Lee, supra,* and is the situation here. But let us follow through on plaintiffs' theory. Since the check-off of each employee's dues depends on the separate authorization which he signed, the rights of the employees are several and not joint; and the action before us is of the kind that has come to be known as a spurious class suit."

The trial court properly determined this is not a representative or class suit.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.